## EX PARTE EDWARD HEYMAN.

### No. 2788.   Decided January 27, 1904.

**1.—Constitutional Law—Local Option.**

It is a rule of universal construction, applicable to constitutions as well as laws, where the instrument gives the Legislature the power to do a thing and prescribes the mode of doing it, the method prescribed measures the limit of the power granted.

**2.—Same—Mode Provided Must Be Followed.**

The Constitution has provided the mode in which local option can be voted upon; and in providing this mode it ex vi termini prohibited any other mode, and the attempt to create other localities than those named is not only without constitutional warrant, but is in direct violation of the provision in question. The Constitution locates the right to vote upon local option; it is given to the localities named, and nowhere does it authorize two or more of the localities to be combined.

**3.—Same—Subdivision of Like Character.**

When the Constitution named certain known subdivisions of counties, and then authorized the Legislature to empower the commissioners court to designate such other subdivision of a county for local option purposes, obviously the power conferred was to name some other existing subdivision such as those already mentioned; the word "such" meaning political subdivisions of the county of like character.

**4.—Same—Status Fixed Not Affected.**

The fact that the Legislature may alter the provisions of the local option law can not affect territories in which the law is then in force, and it is not competent for the commissioners court in a local option election to include in a subdivision precincts in a county or parts thereof whose status as to local option had already been fixed upon them.

**5.—Same—Local Option Territory.**

An election was held for local option in seven out of eight justice precincts in a county, and the commissioners court combined said seven precincts into one local option division for the purposes of said election; some of said precincts had within less than two years before said election

adopted local option and others had rejected it, and the precinct excepted from such subdivision had also within said time adopted local option; prohibition was adopted in said seven precincts, but the precinct in which it is alleged the violation of the local option law occurred defeated prohibition when considered separately. Held that said election was void and that the commissioners court had no authority under section 20 of article 16 of the Constitution, as amended in 1891, to combine said seven precincts into one local option division of said county.

**6.—Same—Commissioners Precincts—School Districts.**

At the time of the adoption of both the original and subsequent amendment to the Constitution on the subject of local option, there were other known political subdivisions of a county besides justice precincts, towns and cities, to wit, commissioners precincts and school districts, and the latter, if still unaffected by local option, are meant to be designated by the commissioners court under a correct construction of said constitutional amendment.

**7.—Same—Act of Legislature Unauthorized.**

The amendment to section 20 of article 16 of the Constitution did not warrant the Legislature to so amend article 3384, Revised Statutes, as to authorize the commissioners court to combine any two or more of the existing political subdivisions of a county into a local option precinct, and thus create arbitrarily new subdivisions of a county for local option purposes.

**8.—Cases Qualified and Distinguished.**

See opinion in which the following cases are discussed, qualified and distinguished: Williams v. State, 31 S. W. Rep., 654; Ex parte Brown, 34 Id., 131; Ex parte Rippey, 68 Id., 687; Medford v. State, 74 Id., 768, and other cases.

From Cook County.

Original application for habeas corpus for release from a commitment for violation of the local option law.

The opinion states the case.

*J. T. Adams, Culp & Giddings,* and *Davis & Garnett,* for appellant.— Under article 402 the sale must occur in a county, justice's precinct, school district, city or town, or subdivision of a county in which the sale of intoxicating liquor has been prohibited under the laws of this State.

It is claimed that all of Cooke County, except the Burns City precinct, is a subdivision of Cooke County. This term "subdivision of a county," which first occurs in the amendment to the Constitution, must be given its ordinary meaning. The Constitution, section 20, article 16, says, "any county, justice's precinct, town, city or such subdivision of a county as may be designated by the commissioners court of said county." Mr. Bouvier gives no definition of subdivision, but says, to subdivide is to divide a part of a thing which has already been divided. Mr. Webster says to subdivide is to divide the parts of into more parts; to part into smaller divisions; to divide again what has been divided. He says a subdivision is a part of a thing made by subdividing; the part of a larger part. He says also that to divide is to sever into parts or pieces. He says that a division is a portion separated by the division of a mass.

Precincts are divisions of a county, and when the term "such subdivisions as may be designated by the commissioners court" comes after precinct, it certainly ought to mean less territory than a precinct, such as a school district or some other political subdivision into which precincts are divided. The real object and purpose of the amendment was to permit

local option or prohibition elections to be had in school districts and in lesser parts of a county than precincts. Tummings v. State, 22 S. W. Rep., 409. Much of the confusion that arises from the construction of the local option law would be avoided by giving to the term "subdivision" its ordinary meaning. But be that as it may, the court can not give to the term "subdivision" a new and arbitrary meaning. Had the framers of the Constitution intended that the term "subdivision" should have other than its ordinary meaning, they would have so said. Now when a county has been divided into eight divisions or precincts, what is more absurd than to call seven of these precincts a subdivision of a county? It takes seven original parts or divisions to make one subdivision.

It is not lawful to include in an order for a prohibition election wet and dry precincts, for under the statute the law remains in force in the precinct adopting it until the people in that precinct shall by a majority vote decide otherwise (Rev. Stats., art. 3390), and to permit such a precinct to be included with others in an election would be to let the law remain in force until the voters in other precincts, in connection with the one adopting it, should decide otherwise. This would do violence to that statute declaring that when a precinct adopts local option it should remain in force until the voters of that identical precinct should by a majority vote decide otherwise. If it should be claimed that in cases where wet and dry precincts are included in the same order for an election that the condition of the dry precincts is not affected if the election results against prohibition, and this view is sustained, then we insist that such election is illegal, because for an election to be a valid one its results must affect in the same manner the entire territory for which it is ordered and held. If it does not affect the dry precincts, which are included in the order for election, then the election would be illegal and void, because the voters in such dry precincts vote upon no issue that would or could in any manner affect them. The right to hold elections must be by express law. 11 Am. and Eng. Enc. of Law, 2 ed., p. 562.

If this election be legal, there would be no rest from agitation. The people would be harassed and annoyed with elections as often as the zeal and ingenuity of the commissioners court could devise a new grouping of political subdivisions. This absurd consequence can be avoided by putting a practical common sense construction upon the statute. It is evident that article 3384 contemplates orignal or first elections. If the commissioners court can lawfully group political subdivisions together, it should confine itself to unoccupied territory and should not embrace territory which has already exercised its right and adopted the law. If a precinct has, in the exercise of its unquestioned rights under the statute, had an eletcion and rejected prohibition, it can not for at least two years be used as a factor in any new group. If it had adopted prohibition, then it can not be made a feature in any new group until it has repealed prohibition and for two years thereafter. As was well said in State v. Har-

vey, 33 S. W. Rep., 885, it is common sense to hold that the Legislature never intended that a precinct should be harassed with an election at public expense to adopt a law already in force in such precinct. In Ex parte Bains, 45 S. W. Rep., 24, this court held that where local option is put in force in a precinct, it is not affected by any subsequent legislation. Lawhon v. State, 9 S. W. Rep., 355; Dawson v. State, 6 S. W. Rep., 820; Adams v. Kelley, 44 S. W. Rep., 529; Aaron v. State, 29 S. W. Rep., 267; Robinson v. State, 9 S. W. Rep., 61; State v. Harvey, 33 S. W. Rep., 883; Medford v. State, 74 S. W. Rep., 766.

*Howard Martin,* Assistant Attorney-General; *Lewis Rogers, Cooper & Thomason,* and *C. L. Potter,* for the State.—We are firmly convinced that the Legislature itself, in the light of former laws, had a right to provide for new conditions, and that if they gave a precinct which had former local option a right to participate in a more extended local option, that the participation would not annul the more extended election. But here the amendment to the Constitution itself authorizes the commissioners court to adopt the greater subdivision that they did adopt in this case in which the election was held. Suppose a resolution amending the Constitution so as to prohibit all local option laws had been submitted to and adopted by the people; would that not repeal and annul all local option statutes and local option elections in this State? Are not the people supreme, and can not they by constitutional provisions do away with all law on a given subject? This can not be denied. If it be true that they could annul or repeal the law in this way, then why can not they change it, and enlarge it or modify it by such an amendment to the Constitution as that adopted in 1891 in this State? If city local option should be provided for by statute, can not subsequent amendment to the Constitution provide also for county local option or precinct local option, or district local option, or for State prohibition? If so, what figure would the question as to it being subsequent to the putting in operation of city law have? We can conceive of none. This is not a case where you are trying to add to or subtract from the law adopted by the people, by subsequent legislation, and without their consent, but it is a case in which subsequent provisions of the Constitution and laws give the people additional advantages and rights, and this they have in this case approved and adopted.

The principle that the express mention of one thing implies the exclusion of another thing is occasionally utilized in construing a statute, but like other rules of construction it is useful only for the purpose of arriving at the intention of the lawmakers, and it will not be applied if not in harmony with such intent. 17 Am. and Eng. Enc. of Law, 2 ed., p 25; 23 Id., 1 ed., p. 447. The established principle of our local option statutes is favorable to prohibition, on the one hand preventing an election in any portion of prohibition territory until such territory has repealed the law, but on the other hand declaring the failure to carry pro-

hibition shall not prevent an immediate election in a larger or a smaller district. It is not to be supposed that the Legislature intended to overturn this established principle without expressing itself with irresistible clearness. 23 Am. and Eng. Enc. of Law, 1 ed., p. 357.

HENDERSON, JUDGE.—This is an original application to this court for the writ of habeas corpus, which was granted by the presiding judge in vacation, and made returnable before the full court, and now comes before us for determination. It appears from the record that, under the orders of the Commissioners Court of Cooke County, made on July 18, 1903, an election was held for local option on August 8, 1903, for all of said county, except one precinct, to wit, Burns City precinct; and that prohibition carried in said seven precincts, but the precinct in which the offense relator is charged to have committed, to wit, precinct No. 1, antiprohibition carried. After prohibition had been put into effect by publication, relator was arrested for selling intoxicating liquors in said precinct No. 1, in violation of the prohibition law as adopted in all said seven precincts; and he has invoked the power of this court by habeas corpus, insisting that said election was void, because the Commissioners Court of Cooke County had no right, under section 20 of article 16 of the Constitution of 1876, as amended in 1891, to combine said seven justice precincts into one local option subdivision of said county. It further appears from the record that justice precinct No. 4 of Cooke County, known as Roxton precinct, adopted prohibition by an election held on June 27, 1884; that precinct No. 6, known as Valleyview precinct, adopted prohibition at an election held on March 7, 1901; that precinct No. 2, known as the Dexter precinct, adopted prohibition at an election held on March 18, 1902; that precinct No. 7, known as the Callisburg precinct, adopted prohibition at an election held on October 18, 1902; that precinct No. 5, known as the Marysville precinct, rejected prohibition at an election held on December 13, 1902; that precinct No. 3, known as the Burns City precinct (and which was not included in this local option election) adopted prohibition at an election held on December 13, 1902. That precinct No. 1, known as the Gainesville precinct, and precinct No. 8, known as the Muenster precinct, have never adopted local option until this last election. It will be further seen that the entire county of Cooke refused to adopt prohibition at an election held on May 24, 1902. Thus, it will be observed that the commissioners court combined said seven justice precincts of Cooke County into one local option subdivision, with the status as to local option fixed upon them as above shown. This was done under the amendment to article 3384, Revsed Civil Statutes, passed by the Twenty-fifth Legislature (Acts, p. 235), which gave to the county commissioners authority to include two or more justice precincts into a subdivision for the purpose of holding a local option election. Relator insists that this can not be done under a proper construction of section 20 of article 16 of the Constitution, and authori-

ties which have interpreted the same. On the other hand, the State insists that the Commissioners Court of Cooke County was authorized to do what they did in carving out and designating said subdivision, by said amendment to article 3384, Revised Civil Statutes, and that that amendment was authorized by section 20 of article 16 of the Constitution of 1891. It is insisted that this question is res adjudicata under the decisions of this court, and we are referred to Williams v. State, 31 S. W. Rep., 654; Ex parte Brown, 34 S. W. Rep., 131; Ex parte Rippey, 68 S. W. Rep., 687; Medford v. State, 74 S. W. Rep., 768, and other cases. And it is urged that this view is also supported by the decisions of our Courts of Civil Appeals and we are cited to Kidd v. Truett, 68 S. W. Rep., 310; Martin v. Mitchell, 7 Texas Ct. Rep., 716; Sweeney v. Webb, 8 Texas Ct. Rep., 597, and other cases. We have examined the authorities referred to, and are constrained to differ with counsel representing the State as to what was really decided in those cases.

In the Williams case, supra, it was indeed assumed that a local option election could be held in two justice precincts; but the main question there seems to have been whether or not the same should be described by metes and bounds, and no question was made as to the status of either of said precincts, as to local option at the time; presumably they were wet. Nor was the constitutional question presented there as it is here. However, the court, in passing on the case, stated in general terms, that a subdivision may consist of a whole of the justice precinct and a part of another or others, or two or more justice precincts. This case followed Ex parte Brown, 34 S. W. Rep., 131. Both cases were decided under the act of the Legislature of 1893, which in terms authorized the Legislature to carve out any territory of a county and make a subdivision of it, regardless of the known political subdivisions of a county. In neither of these cases was the constitutional question discussed, but it appears to have been assumed that the act was constitutional, and merely the effect of the legislation on the subject reviewed. Rippey's case, supra, was subsequent to the Act of 1897, which amended article 3384 of the local option act, repealing the power of the Legislature to authorize the commissioners court to carve out a subdivision; and substituting in lieu thereof, the authority of the commissioners court to embrace two or more subdivisions of a county into one local option territory. It is true in Rippey's case two local option justice precincts were embraced in the same local option territory as a commissioner's precinct. One of these had gone wet within two years before the election, and the other had gone dry within the two years prior to the election in said commissioner's precinct. But this phase of the question was not discussed in the opinion, although it may have been incidentally raised. The case appears to have been decided upon the authority of Ex parte Fields, 39 Texas Crim. Rep., 50, which was authority for holding that a county election could be held regardless of the status of the various precincts of the county as to local option; and the court appears to have treated a commissioner's precinct,

which might embrace two or more justice precincts, on the same principle as a county election. As far as this case is concerned, it is not necessary here to discuss that question, as the election here complained of was not held in a commissioner's precinct. In Medford's case, supra, the court merely said, in passing upon other questions, that the commissioners court unquestionably had authority to create subdivisions for local option purposes; but this was not necessary to that decision. And it may be said as to other cases that there may be expressions used and propositions stated assuming the constitutionality of the acts of the Legislature above aluded to; yet, so far as we are advised, none can be found in which the constitutional question here involved was presented and discussed.

Nor do we believe it can be asserted that in the civil cases on local option which have gone before our supreme civil tribunals, the constitutional question as to the authority of the Legislature to authorize the commissioners court to arbitrarily carve out local option territory, or to join together known political subdivisions of the county into local option territory, has ever been presented and decided. In Kidd v. Truett, 68 S. W. Rep., 310, the court appears to have taken jurisdiction of the question as to the validity of a local option election in a school district, which embraced a part of justice precinct where local option already prevailed, and to have held such election legal; though we note the dissent of Templeton, J. This decision was rendered prior to the case of Norman v. Thompson, 72, S. W. Rep., 62, in which the Supreme Court held that, in a contested election case, the court only had jurisdiction of matters transpiring on the day of the election, such as fraud, etc., which might render the election void. Nor did the court in Kidd v. Truett, discuss the constitutional question as bearing on the right of the commissioners court to order an election in territory a part of which already had local option. Under the view we entertain, as will be hereafter shown, there can be no question as to the power of the commissioners court to order an election in either commissioner's precincts or a school district where no part of the territory is at the time under local option. Nor was the Constitution discussed in Martin v. Mitchell, 7 Texas Ct. Rep., 716, although the court passed on the validity of the local option election in commissioner's precincts 1, 3 and 4 of said county. Judge Stephens remarked in that case, that under Norman v. Thompson, supra, he did not believe the court had jurisdiction to decide the questions involved in said case. In Sweeney v. Webb, 8 Texas Ct. Rep., 497, the able judge who rendered that opinion did not assume to construe the power of the Legislature to create subdivisions under the local option clause of the Constitution, but expressly stated that the election in the particular case was a county election; and if the act complained of was subject to constitutional objection, it would not have the effect to make the whole act void, etc. Oxford v. Frank, 5 Texas Ct. Rep., 941, involved a local option election in Erath County held in 1902, and involved the attempt by the commissioners court to arbitrarily carve out territory not theretofore con-

stituting a political subdivision of the county. The effect of that decision was simply to hold that the prior Act of 1893 had been repealed by the amendment of 1897 to article 3384. However, the court says: "The power of the people in a given section in effect to enact a law for such territory is in its nature essentially legislative and depends upon constitutional and legislative grant. The constitutional provision operative in the instance before us does not in express term contain such grant. It is not in this particular self-enacting; but it is thereby made the duty of the regularly constituted legislative body to enact a local option law for the specific purpose." The learned judge further says: "The discretion vested in the commissioners court by this amendment was limited to the designation of the particular one or more of the political subdivisions of the county theretofore in existence, and did not extend so as to authorize said court to arbitrarily select and fix a territory, ignoring and segregating such political subdivisions." We think the court was eminently correct in holding that the Act of 1897 superseded the Act of 1893 and repealed it; and that was the only real question involved in the case aside from some questions of procedure.

However, as stated before, no matter what may have been the holding of the Court of Civil Appeals and the Supreme Court upon these questions, in our opinion, since the decision in Norman v. Thompson, supra, none of them would be authority upon any question concerning the local option election—except what transpired on the day of the election, hindering a full and fair election. However, we may be in error in the analysis of the cases above discussed, and what they really hold; still the question is an open one until it is decided correctly; especially is this true when for the first time our attention is called to the legal status of justice precincts that are dry under the vote of the people thereof, and the power under the law to combine these precincts with others that are wet. Moreover, back of this is the question as to the proper construction of our Constitution on the subject of local option.

In order to present the question, we quote section 20 of article 16, being the amended Constitution of 1891, as follows: "The Legislature shall at its first session enact a law whereby the qualified voters of any county, justice precinct, town, city (or such subdivision of the county as may be designated by the commissioners court of said county) may by a majority vote determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits." The Constitution of 1876 was an exact counterpart of the above, except the language relating to subdivisions of a county.

Now the question occurs, what did the framers of the Constitution mean by authorizing the commissioners court to "designate a subdivision of the county? Did they, by the use of this term, authorize the commissioners court to create a subdivision, or did they mean that they had authority to name other existing subdivisions of a county? Recurring to the definition of the term "designate," we find it means, "To point out,

or mark with some particular token; to show or point out; to indicate by description, or by something known or determinate." 9 Am. and Eng. Enc. of Law, p. 405, and authorities there cited. Create means "to bring into being; to cause to exist; to produce; to make." 8 Am. and Eng. Enc. of Law, p. 228, and authorities there cited. These definitions we understand to be the ordinary and common meaning of these terms. As was said by Chief Justice Marshall in Gibbons v. Ogden, Wheaton, p. 1, "The framers of the Constitution and the people who adopt it must be understood to have employed words in their natural sense, and to have intended what they said." Now, if we assume, as we must, that the Constitution builders used these terms to express accurately what they meant, then it follows inevitably, when the Legislature was given power to authorize the commissioners court to designate such division of the county for local option purposes, or in which to hold a local option election, it was simply intended to give it (the Legislature) the power to authorize the commissioners court to designate, that is, name some other subdivision of the county. If, on the other hand, it was intended to confer such authority as is claimed by the State, it would have been an easy matter to have used the word "create" in the Constitution instead of "designate." At the same time we would not be understood as holding that there might not be conditions under which the word "designate" could be twisted from its ordinary meaning and signification so as to make it mean "create." However, there must be a real difficulty of construction to be solved before we would be authorized to resort to extrinsic aid, for where no ambiguity or doubt appears in the law, the court should confine its attention to the law, and not allow extrinsic circumstances to introduce a difficulty where the language is plain." Cooley's Const. Lim., p. 84. Looking at the clause in question it is plain enough and suggests no difficulties as to construction. There is nothing in the environments of the section or in the conditions surrounding it which to our minds creates any difficulty such as would require us to resort to extraneous help in order to give it a meaning different from its ordinary signification. Names are used in the Constitution to point out known subdivisions of a county, that is, the voters of a county, justice precinct, town or city are authorized to vote on local option; and then the Legislature is permitted to authorize the commissioners court to designate a subdivision of the county; using throughout, in naming the places where the right of local option could be exercised, the singular number and not the plural. And these particular subdivisions named are authorized to vote on local option, not only once, but from *time to time.* Now, if the subdivisions enumerated by name in the Constitution had been the only known political subdivisions of a county there might be some semblance of authority to give to the word "designate" a different meaning from that in which it is ordinarily accepted. But the fact is, that at the time of the adoption of both the original and subsequent amendment to the Constitution on the subject of local option, there

were other known political subdivisions of a county. The Constitution itself provided for commissioners' precincts; and school districts had been created by the Legislature long before the constitutional clause in question was adopted.

The Act of 1897 amending article 3384 shows that the Legislature in authorizing a vote on local option named the places named in the Constitution, and under the power conferred to designate such subdivision, etc., followed this obvious interpretation of the Constitution in naming commissioners' precincts and school districts, which were subdivisions of the county then existent. However, they did not stop there, but then proceeded to interpolate or engraft a new provision on the Constitution; that is, they authorized the commissioners court, under its power *to designate,* to combine any two or more of such political subdivisions of a county into a local option precinct. See Gen. Laws 25th Leg., p. 235. Thus, as we maintain, creating new subdivisions of the county for local option purposes. We believe it is a rule of universal construction, applicable to constitutions as well as laws, where the instrument gives the Legislature the power to do a thing and describes the mode of doing it, the method prescribed measures the limit of the power granted; that is, "where the means for the exercise of a granted power are given no other or different means can be implied, as being more effectual or convenient." "When the Constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against the legislative interference to add to the condition, or to extend the penalty to other cases." Cooley Const. Lim., pp. 78, 79; and see Ex parte Brown, 42 S. W. Rep., 554.

Now, in consonance with this view, it is evident that the Constitution has provided the mode in which local option can be voted upon; and in providing this mode, it ex vi termini prohibited any other mode, and the attempt to create other localities than those named is not only without constitutional warrant, but is in direct violation of the provision in question. The Constitution locates the right to vote upon local option; it is given to the localities named, and nowhere does it authorize two or more of these localities to be combined; and such combination not only violates the letter, but as we understand, the very spirit of the enactment.

Again, it is a general rule of construction that where general words follow an enumeration of persons or things designated by words of a particular or specific meaning, such words are regarded as limited in their meaning by the former, and do embrace and are held only to embrace persons or things of the same general kind or class as those specifically mentioned. And this rule can only be discarded where the legislative intent is plain to the contrary. 17 Am. and Eng. Enc. of Law, p. 6; Black on Interp. of Laws, p. 141; Endlich on Interp. of Stat., p. 405 to 408 inc.; Whitfield v. Terrell Bros., 62 S. W. Rep., 118; Watts v. State, 61 Texas, 187. Now, under the above rule of construction, when the Constitution named certain known subdivisions of counties, and then au-

thorized the Legislature to empower the commissioners court *to designate such other subdivisions of a county* for local option purposes, obviously we would understand that the power conferred was to name some other existing subdivision, such as those already mentioned. "Such" in this connections we think unmistakably means, "subdivisions of like character, political subdivisions of the county."

However, it may be contended that inasmuch as it is conceded that a commissioner's precinct, or a school district, may embrace two or more justice precincts or parts thereof, or embrace towns and cities, the Legislature can do directly what it is authorized to do indirectly; that is, it can bring together originally two or more justice precincts, and thus constitute the same local option territory. We answer this by the observation that the Constitution authorizes the one, but does not authorize the other. Ita lex scripta est. As we have seen, the Constitution undertook to locate certain territory in which the people should be authorized from time to time to vote on local option. It pointed out the mode by which the right was to be exercised; and it gave the people of these localities the right from time to time to vote upon local option. And by the rule "expressio unius est exclusio alterius" it inhibited any other mode. The attempt by the Legislature to combine two or more of such precincts was a creative act, delocalizing a right guaranteed the localities, and destructive of the constitutional provision.

Nor is this view at all antagonized by the fact that regardless of any or all of the subdivisions of a county as to local option, the people are authorized to hold a local option election for the entire county, because the greater includes the less, and the Constitution itself guarantees the right to vote on local option in the county. This is the doctrine announced in Ex parte Field, 39 Texas Crim. Rep., 50. As we understand that decision, it holds the Constitution places the question on the same footing as to each of the subdivisions thereof, but inasmuch as the county is the larger, and embraces all the subdivisions, no subdivisions can defeat its right to hold an election on local option. It is certainly not authority for holding that the Legislature can arbitrarily embrace two or more named subdivisions of a county into local option territory.

The views we have expressed are strengthened and reinforced when we come to look at the local option law itself, which guarantees to voters who have adopted local option the right to hold another election in such territory after the expiration of a certain time. Rev. Civ. Stats., arts. 3393-3395. This was a contemporary construction of the right conferred by the Constitution, on the localities named, to vote on the question of prohibition "from time to time." By this provision they were constrained to preserve the autonomy of the localities named in order that they might exercise their constitutional right to again vote upon the question. This is in consonance with the decision in Ex parte Elliott, 7 Texas Ct. Rep., 59, wherein it is said, "the fact that the Legislature may alter the provisions of a local option law can not affect territories in which the

law is then in force. The law in force in the given territory will stand
as its provisions were at the time it was voted in operation despite sub-
sequent amendments to the law by legislative enactments. The Leg-
islature may amend the local option law, but this ends their power. *It
takes the vote of the people of a given territory to put it into operation,
and it takes the vote of the same people to end its operation."* And see
Dawson v. State, 25 Texas Crim, App., 670. If this were not true, the
statutes above referred to would be entirely nugatory. Although the
Legislature has guaranteed (as was proper they should have done) to pro-
hibitionists the right to another vote on the question in the same territory
after it has been defeated, at the expiration of a certain time, and to
anti-prohibitionists the right, where local option has been carried in
a certain named territory, to again vote upon the question at the expira-
tion of a certain time; yet this right would be entirely defeated if the
construction contended for by the State is sound. For instance, where
local option has carried in a justice precinct, and has been in force a
year, the people have the right to again vote upon the question in that
precinct at the expiration of another year. But if the commissioners
court can attach another justice precinct, wet or dry, to the first, and
prohibition is carried in the new territory, necessarily the first precinct
is absorbed, and the antis could not after the expiration of the appointed
time exercise their right to get from under the local option. If local
option is defeated in the new territory, it would not avail the antis in
the first precinct. This absorption process could be carried on indefi-
nitely by either pros or antis just as the commissioners court might be
favorable to the one or the other; and thus the autonomy of local option,
as provided under the Constitution, could be absolutely destroyed and
set at naught.

Moreover, under the statute, as we understand it, there is no require-
ment that the precincts or subdivisions should constitute contiguous or
adjacent territory; but remote precincts or subdivisions, if the statute
is given effect, can be joined together; and thus we would be presented
with the strange anomaly of remote precincts of the county, not adjacent
to each other, embraced in local option territory; or distant towns could
be created into local option territory and the vote ordered. Thus one por-
tion of the county, where the prohibition sentiment is in the ascendancy,
might be made to dominate, a remote portion of the county having no
community of interest with the precinct with which it is included by the
commissioners court. Such a result would be startling and was never
intended by the framers of the Constitution. Such a construction if
enforced would be destructive of the principle of local self-government
as to the question of prohibition.

However, if it could even be conceded that under the constitution the
Legislature was authorized to embrace two or more precincts and thus
create new local option territory, then the Legislature must have re-
ferred to such territory as occupied the same status as to local option.

That is, all the precincts must be wet and must have been so a sufficient length of time to authorize a vote to be taken on the question. For when we come to consider other provisions of the statutory law on the subject, we find that after local option is carried in a precinct, it must remain dry for two years before any vote can be again taken, at the expiration of which time the people of the territory to be affected have the right to take another vote on the issue; and where the precinct has gone wet on a vote taken by the people of the precinct, such precinct has a right to again vote on the proposition. This is regulated by articles 3393 and 3395, Revised Civil Statutes.

Now, as to two of the precincts included in the election in Cooke County, these had adopted local option within two years before the election in question. While the regularity of these elections is contested by the State, it does not occur to us that the elections were illegal. These precincts had a right at the expiration of the two years to again vote on the question. Another precinct, Marysville, had defeated local option within two years previously. The statute provides that its status as wet should be respected for at least two years after the former election. The statute provides the contingencies in which another vote embracing the same territory can be had before the expiration of two years, as where a county election is authorized. But there is no exception in the law applicable to the territory here embraced, though the rights of the people of at least three of the precincts, without any legal authority whatever, is utterly ignored. We are aware it has been held that the law which prohibits an election in the same territory within the specified time applied only to the identical territory which had voted on local option, and not a part of the same territory less than the whole, or to a greater territory embracing as a part thereof the territory which had previously voted on local option. Ex parte Brown, 34 S. W. Rep., 131, and other cases which followed that. While that was a decision under the Act of 1893, the principle announced may be conceded as applicable to the more recent Act of 1897. We believe the doctrine announced in that case and others ignored the constitutional guarantee giving to each of the precincts or subdivisions the right from time to time to vote on the question, and is not in harmony with the case of Ex parte Elliott, supra, which in our opinion announces the correct principle. It will be observed that the Constitution guarantees to each of the localities named the right to vote on the question from time to time, and we hold that such right can not be taken from such precincts either by direction or indirection. Accordingly we hold it was not competent in this local option election to include precincts whose status as to local option had already been fixed upon them, even if it could be conceded that under the Constitution the commissioners court had the right to embrace said seven precincts of Cooke County in one local option territory, and order a vote therein on the question of prohibition.

As has been heretofore stated, one of the chief difficulties which has

been encountered in reaching a solution of the important questions presented in this case, is the adjudicated cases on questions of local option, some of which appear to hold a contrary view to that herein expressed. However, as has already been stated, we believe an examination of said cases will show that the constitutional question was either not raised or not properly presented and discussed in any of them. But, even if we have appeared to acquiesce in legislation that authorized the commissioners court to arbitrarily create a subdivision not known to the Constitution, or to include two or more subdivisions, and thus create new local option territory, we hold "acquiescence for no length of time can legalize a clear usurpation of power, where the people have plainly expressed their will in the Constitution, and appointed judicial tribunals to enforce it. A power is frequently yielded to merely because it is claimed, and it may be exercised for a long period, in violation of the constitutional prohibition, without the mischief which the Constitution was designed to guard against appearing, or without anyone being sufficiently interested in the subject to raise the question; but these circumstances can not be allowed to sanction a clear infraction of the Constitution." Cooley's Const. Law, p. 85.

We do not believe that the organic law is susceptible of any other construction than that which we have given it. Its mandate is imperative, and under it our duty is plain. We accordingly hold that the attempt of the Legislature to authorize the commissioners court to combine two or more justice precincts, and thus create other territory than that named and provided for by the Constitution, and the attempt of the commissioners court to do this, by combining said seven precincts of Cooke County, some of which were wet and some dry at the time of the order, was in violation of the constitutional provision on the subject, and is therefore null and void. The relator is therefore entitled to be discharged, and it is so ordered.

*Relator discharged.*

BROOKS, JUDGE (Dissenting).—I dissent from the opinion of the majority. It has neither parallel nor precedent in the previous decisions of this court or of any court. It is in the face of the Constitution, instead of a construction of the same. It violates the statute authorizing the election herein under consideration. It is at variance with the previous decisions of this court since the adoption of the amendment to the Constitution in 1891; is at variance to the decision of the Court of Civil Appeals at Dallas, and is also at variance with the decision of the Court of Civil Appeals at Fort Worth.

Section 20 of article 16 of the Constitution provides: "The Legislature shall at its first session enact a law, whereby the qualified voters of any county, justice precinct, town, city (or such subdivision of the county as may be designated by the commissioners court of said county) may by a majority vote determine from time to time, whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

45 Crim.—35

That portion of this section in parentheses was placed in the Constitution by the amendment of 1891. Prior to said amendment the Legislature had passed a law by which the commissioners' court of its own motion, or upon proper petition signed by a number of legal voters, could determine from time to time in the respective subdivisions whether local option should be adopted or not. Then, there was an evident purpose on the part of the Legislature in submitting the amendment in question. That purpose must have been one of two: either the amendment authorizes the commissioners court to designate an arbitrary subdivision, or it authorizes the designation of a political subdivision. The most restricted view of the question that can possibly be taken is the latter. If the amendment merely contemplated the designation of pre-existing political subdivisions, then clearly the commissioners court could designate any pre-existing subdivision or any number of pre-existing political subdivisions. Subdivision means a smaller portion than the whole. Designate means "to mark out and make known; to point out to general knowledge; to indicate; to show; to call by distinctive title. To denominate; to name; as to designate the boundaries of a county. To point out by distinguishing from others—as to designate the more active rioters. To indicate or set apart for the purpose or duty." Then, under this provision the commissioners court are clearly authorized to make known, mark out and point out at least any political subdivision. Commissioners and justice precincts, cities and towns are recognized by the Constitution as political subdivisions of a county. If the commissioners court can point out any subdivision they may designate, then it is folly to say that they can not combine one or more justice precincts as they see fit. The insistence is seriously urged that the Constitution does not say "subdivisions" but "subdivision"—in the singular. One precinct of a county is a subdivision of the county, since it is a part of the whole; seven precincts would also be a subdivision. It is distorting instead of construing the Constitution to hold otherwise. The Constitution would be meaningless with any other construction. If prior to the amendment of 1891 the Legislature had authorized the commissioners court of its own motion to order an election for a county, a justice precinct, town or city, to hold that the amendment merely gives them this authority is rendering meaningless and senseless the amendment to the Constitution. Why should the amendment say that they can designate any subdivision, if the Constitution intended to limit them to the designation of one subdivision? This can not be a proper construction of our Constitution. I take it that under any possible view, the Constitution confers upon the commissioners court the power to order an election for six or seven justice precincts as a subdivision; or for one justice precinct; for the whole county, or for a town or city or commissioners precinct. In other words, this amendment was clearly intended to clothe the commissioners court with discretion in ordering the election.

Since the adoption of the amendment of 1891, the Legislature ap-

pears to have restricted the right of the commissioners court to political subdivisions. Article 3384, as amended by the Acts of the Twenty-fifth Legislature (1897), p. 235, reads: "The commissioners court of each county in the State, whenever they deem it expedient, may order an election to be held by the qualified voters of said county, or of any commissioner's or justice's precinct, or school district, or any two or more of any such political subdivisions of a county, as may be designated by the commissioners court of said county, to determine whether or not the sale of intoxicating liquors shall be prohibited in such county, or commissioner's or justice's precinct, or school district, or any two or more of any such political subdivisions of such county, or in any town or city; provided it shall be the duty of said commissioners court to order the election as aforesaid, whenever petitioned so to do by as many as two hundred and fifty voters in any county, or fifty voters in any other political subdivision of the county or school district, as shall be desiganted by said court, or in any city or town, as the case may be; provided, that if the precinct or precincts designated embrace within the limits an incorporated town or city, then such election shall only be ordered when the petition for the same is signed by qualified voters, not less than one-tenth in number of the total vote cast for Governor at the next preceding general election in such incorporated town or city; and in case an election is asked for a subdivision of said county, composed of two or more complete commissioners' or justices' precincts, or school districts, such petition shall describe such subdivision by metes and bounds, as well as by the proper numbers of such precincts or school districts; and said petition and the description of such subdivision shall be recorded in full in the minutes of the commissioners court, and such description shall be embraced in the notice given for such election; provided, that where a school district, city or town may be composed in part of two or more subdivisions of the county, named hereinbefore, the right to order and hold an election in such school district, city or town shall not be denied; and provided further, that no city or town shall be divided in holding a local·option election for any of the other subdivisions named herein; nor shall any school district· which has adopted local option be divided in a subsequent election, held for any other of such subdivisions ·covering a part of the territory of such school district."

Waiving the question as to whether this limitation, in the light of the Constitution, is proper or not, then I believe that clearly within the letter and spirit of the above quoted article, the act of the commissioners court ordering the election under consideration was entirely constitutional, though ordered for seven justices' precincts. The majority insist that the commissioners court can order an election for one commissioner's precinct, usually it contains two and a part of a justice's precinct—yet the commissioners court is impotent to order an election for three justices' precincts. No rational reason can be given for such a tortuous construction. By what process of reasoning can it be said that a commissioner's precinct is a political subdivision ˙and a justice's

precinct is not, in view of the fact that the very article of the Constitution under consideration mentions justice's precincts and does not mention commissioner's precincts, I am, at a loss to know.

In Oxford v. Frank, 5 Texas Ct. Rep., 941, the Court of Civil Appeals at Fort Worth, in a very learned opinion, clearly uphold the right of the commissioners court to order an election under the above article for as many political subdivisions of a county as the commissioners court may see proper. However, it is insisted that this case was overruled by Norman v. Thompson, 6 Texas Ct. Rep., 607. In the latter case the Supreme Court held that on the contest of elections the civil courts merely had the right to pass upon the accuracy of the vote, rather to count the votes and ascertain how the majority stood, and did not have the right, under the statute on the question of contesting elections, to pass upon other questions than the one stated. Be this as it may, the reasons of the learned judge in that opinion are cogently expressed and commend themselves to any one passing upon this question.

Reverting to the constitutional provision under consideration. It is desired to ascertain what is a subdivision. Judge Davidson answers this question in Nichols v. State, 37 Texas Crim. Rep., 546, at least does so inferentially—using the following language, quoting from Spiegel v. State, 34 Texas Crim. Rep., 465: "We now hold that where the election is for the entire county or for any justice precinct in the county in its entirety or for any town or city therein, it is not necessary to set forth the metes and bounds thereof, either in the minutes of the commissioners court or in the notice to be given for the election; *and only where it is some subdivision of the county distinct and different from a justice precinct or a town, or city* is such description necessary. These latter, it is true, are, in a sense, subdivisions of a county; but they are *already designated,* and their boundaries matters of record, and are known, and it is sufficient merely to name the justice precinct or the town or city to be affected." Here is a clear statement, I take it, of the fact that if the commissioners court designate any arbitrary portion of a county, it is a subdivision of the county, as contemplated by the Constitution. Spiegel's case, referred to, was rendered by Judge Henderson. So, both members of this court rendering the majority opinion herein hold that any portion of a county is a subdivision whenever it is so designated by the commissioners court. And again, in Ex parte Brown, 34 S. W. Rep., 131, this language is used: "Prohibition in article 3236 applies to counties, cities or subdivisions of a county, and that an election can not be had, whether prohibition carries or is defeated, until the expiration of two years thereafter. This means where the precise territory is to be affected, and has no reference to carving below the extent of such territory. The last act gives to the commissioners court the right to carve out such territory as they may deem proper; it may be taken from two or more adjacent precincts. When carved it is treated as a separate and distinct subdivision of the county for local option purposes." This opinion was rendered by Judge

Hurt, in 1896, and concurred in by the full court. Judge Henderson, in Williams v. State, supra, uses this language: "As strengthening this position, appellant urges that if the local option election is to be held in either of said known precincts, it would require a petition signed by fifty voters, and if the two can be embraced as is done in this case, that the petition of fifty voters can accomplish, when they are designated as subdivisions, the same object it would require one hundred voters if they petition or vote singly. While this may be true, to our minds it furnishes no reason why the two precincts, or even more territory short of the whole county, can not be embraced in the order and authority vested in such subdivision to vote upon local option upon a petition of only fifty voters of such county, for, as we understand it, so the law is written. As we construe the law it is only necessary that the petition be signed by fifty voters, except in two contingencies; one is where the local option election is for the county, and the other is where it is an incorporated town," etc. Here again we have the definition of subdivision, and here again we have a declaration by this court upholding the inherent right of the people through the commissioners court to hold an election for a subdivision regardless of the fact that local option had or had not existed in part of the designated territory.

In Kimberly v. Morris, 31 S. W. Rep., 809, Lightfoot, C. J., one of the purest and ablest judges that ever adorned the bench in Texas, in passing upon this question, said: "Undoubtedly one of the objects of the Legislature in passing the statute of 1893, was to meet the construction of the old statute by a majority of the court in Whisenhunt's case, 18 Texas Crim. App., 491. In any event the statute of 1893 did meet it and there can be no question of the proper construction of the letter of the statute. There can be no more reason for holding a precinct has such a vested right as would prevent the entire State voting on prohibition. If such a rule would prevail it would present the novel aspect of a very small fraction or subdivision of the State, to wit, a county or subdivision of a county, thwarting the will of the people of the whole State. It is true that State prohibition would not come under the same section of the Constitution; but the question of vested rights would be the same. In this case neither precinct number one, nor precinct number two, nor the people of such precincts, acquired any vested right to the result of an election under the law. The law itself charged them with notice that a different result might be reached by a vote of the people of the whole county." But it may be suggested that this decision was rendered under the Act of 1893, where the Legislature, in compliance with the constitutional provision under discussion, had awarded to the commissioners court the right to make arbitrary subdivisions. But the same reasoning applies with reference to the Act of 1897, since said act merely limits the power of the commissioners court to political subdivisions. There is not a jot or tittle in the local option law that grants or awards an anti or a pro, as is sagely suggested by the majority opinion, any rights whatever. It is not required that

one should be an anti or a pro to petition for the election; he may be either; he may be neither; but if he is a qualified voter in the county or territory to be affected he can petition for the election. He has no vested right to the continuance of the law, except where the law for that particular territory alone is to be affected. If the commissioners court upon petition or upon its own motion, deem it proper to order an election for a larger territory, it has a perfect right to do so, and the election would be valid, regardless of the fact that a portion of the territory for which the election was ordered might then have local option; and might, if the last election was not held, have a right to vote for their particular territory within a week after the last election. The majority opinion recognizes this principle as correct in relation to the county. That is, they concede that if a precinct has local option, and the two years is nearly up, if an election is ordered for the county, and it goes in favor of prohibition, this bars the precinct from holding an election. Now, if the precinct has a vested right in holding another election within the two years, there is no justice or reason or law for saying that a county can take this right away, any more than there is for saying that a larger subdivision can do so.

The majority rely with great force upon Elliott's case, 7 Texas Ct. Rep. 59. The construction placed upon it was never dreamed of by any member of this court at the time of its rendition, and this statement will be borne out by the presiding judge of this court. In this decision the principle laid down in Dawson v. State, 25 Texas Crim. App., to the effect that where a certain territory adopts local option that that particular territory must vote it off, was clearly upheld. School district No. 54 attempted to hold an election in this case, part of its territory being in a dry justice precinct and part in a wet justice precinct. The court held the law inoperative and void, on the theory that if the election went wet it would destroy the election in the dry precinct. This violates the very letter of the decisions cited, and relied upon by the court in the rendition of the majority opinion. Under the majority opinion, I take, it now that a school district has a constitutional right to hold an election for local option purposes; and if the construction placed upon the Elliott case, supra, is correct, this would depend upon the status of the respective justices' precincts in which the school district might lie as to whether the commissioners court could order it or not. The writer says that, if the construction placed upon the Elliott case is correct, then he did not so understand the decision at the time it was written, nor does he so understand it now. But, if the majority's construction be correct, then it violates both the Constitution and the decisions cited to support it. It follows that the case of Kidd v. Truett, 68 S. W. Rep., 310, is the correct exposition of the law on this question.

In Rippey's case, 68 S. W. Rep., the principle here contended for was reannounced; and the decision in Ex parte Fields, 39 Texas Crim. Rep., 50, was again upheld. That is, if a precinct adopts local option it stays local option, so far as that precinct is concerned, until voted out at the

expiration of two years. But the county can order an election, or any larger subdivision of the county than that precinct can order an election including that precinct.

But it is seriously insisted that the constitutional question under consideration has never been passed upon by any of the decisions cited by the majority of the court or by the writer. No better answer need be made to this than the fact that the Constitution is so plain and simple that it needed no construction, and all of the decisions in passing upon the validity of the statutes under consideration conceded their constitutionality, and were merely called upon to construe the validity of the statute. In no case before this court was the question ever more thoroughly discussed or more research and ability displayed in assailing the validity of the statute and the constitutional provision than the Rippey case, supra; and yet no one questioned the constitutional provision under consideration, but the sole insistence was that it did not accord to the citizens the equal protection of the law, etc., in ascertaining their wish and will about local option. But it is sagely suggested that the constitutional provision does authorize the commissioners court to order a local option election for commissioners precincts and school districts. If this had been the intention of the Constitution, instead of saying "or such subdivision of the county as the commissioners court may designate," the amendment to the article under consideration would have said, "or other subdivision of the county." When met with the incongruity that two or more justices' precincts may be contained in a commissioner's preprecinct, the majority use the pedantic declaration "ita lex scripta est." The only answer necessary to this is that the law is not so written. It is a well known aphorism of the law that that can not be done indirectly which can not be done directly. If the Constitution did not intend to permit the commissioners court to order an election for the two or three precincts, as they might see fit, they certainly would not have been authorized to allow an election for a commissioner's precinct, which contains two and one-half justice's precincts. As a court it is not proper to say whether legislation is wise or not. The statute does not recognize, in authorizing an election, whether part of the territory to be affected is then under local option or not; but its clear mandate is that the commissioners court may order an election for two or more political subdivisions. I think this, as indicated above, is the most restricted construction that could be given to the constitutional amendment. There might be serious argument to the effect that the Legislature had transcended its power in limiting the election at the instance of the commissioners court, to political subdivisions, since the Constitution authorized an election for such subdivision as the commissioners court may designate. I agree with the majority that Judge Marshall is correct in saying, "that constitutions must be construed according to their plain signification;" but clearly I disagree as to the applictaion of this salutary rule of construction. I do not think that the provision under considera-

tion can be tortured into a construction that would authorize anyone to say that the Constitution intended to give to the commissioners court power to "create" subdivisions. No power, save Omnipotence, can "create" land; but it is a simple act, clearly within the purview and power of the commissioners court to point out and designate a subdivision of a county for local option purposes. So believing, I wish to enter my dissent from the majority opinion.