**UNITED STATES of America**

v.

**Milton K. RAYBOULD.**

**No. 4:00–CR–075–A.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Sept. 5, 2000.

Ira Raymond Kirkendoll, Attorney at Law, Federal Public Defender, Fort Worth, TX, for Milton K Raybould.

Nancy E Larson, Attorney at Law, U.S. Attorney's Office, Fort Worth, TX, for U.S. Attorneys.

## MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

Having considered the motion filed by the government on August 24, 2000, for reconsideration of the court's denial of the government's motion to seal, the court has determined that the motion to reconsider should be denied.

## I.

### The Government's Motions and Defendant's Response

On August 18, 2000, the government submitted for filing its Motion for Downward Departure Pursuant to U.S.S.G. § 5K1.1, asking that the court order at the sentencing of defendant, MILTON K. RAYBOULD, a downward departure from the applicable guideline range "due to the **substantial assistance** provided by the defendant in an on-going criminal investigation being conducted by the U.S. Attorney's office in the Northern District of Texas." Government's Mot. for Downward Departure at 1. On the same date, the government filed its motion to seal the motion for downward departure. The motion to seal, which did not allege any ground for the relief the government sought, was denied by order signed August 22, on which date the motion for downward departure was filed in the public records of this action. On August 24 the government filed a motion to reconsider the court's denial of the motion to seal. On August 29 the court ordered that defendant had until September 1 to file whatever response he wished to make to the government's motion to reconsider. On August 30 defendant filed a document titled "Defendant's Response to Government's Motion to Re-

consider Government's Motion to Seal," in which defendant's sole response was that "[d]efendant does not object to the Government's Motion to Seal Downward Departure." Defendant gave no reason why there should be a sealing—he did not suggest that he feared for his safety if the motion for downward departure were to remain in the public files.

The only reasons given why there should be a sealing of the motion for downward departure are those contained in the motion to reconsider. No specific facts are alleged. Rather, the motion to reconsider seeks to justify the request for sealing by generalities and conclusionary statements. In a general way, the government asserts that "sealing is necessary in this case to protect the integrity and success of an ongoing investigation," that "it is necessary to seal the motion to protect the safety of the cooperating individual," and that "it is necessary to seal the motion, and others of this nature, to encourage the cooperation of individuals in the future." Mot. to Reconsider at 1–2. The motion to reconsider is not verified, or supported, by any affidavit or declaration.

█ The failure of the government to allege any ground in its motion to seal was sufficient reason for the denial of that motion, and would provide ample justification for denial of the motion to reconsider. However, because the tone of the motion to reconsider suggests that the government is of the belief that an order sealing a motion for downward departure should be granted by the mere asking, the court is providing this explanation of why that is not so.

## II.

### Analysis

A. *Applicable Law.*

█ The public has a common-law right to inspect and copy judicial records. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *S.E.C. v. Van Waey-*

*enberghe,* 990 F.2d 845, 848 (5th Cir.1993). This access to judicial records is not absolute, but a district court's discretion to seal the record of a proceeding "is to be exercised charily." *Van Waeyenberghe,* 990 F.2d at 848 (quoting *Federal Sav. & Loan Ins. Corp. v. Blain,* 808 F.2d 395, 399 (5th Cir.1987)). Public access to judicial records "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *Id.* at 849 (quoting *Littlejohn v. Bic Corp.,* 851 F.2d 673, 678 (3d Cir.1988)).

This common-law rule has been referred to as a "strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1179 (6th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984). In *Brown & Williamson,* the Court said about the common-law rule (as well as the right under the First Amendment of the Constitution of the United States to have access to judicial proceedings) that information contained in court documents "often provide[s] important, sometimes the only, bases or explanations for a court's decision." *Id.* at 1177. "Without access to the proceedings, the public cannot analyze and critique the reasoning of the court." *Id.* at 1178.

█ In *Richmond Newspapers, Inc. v. Virginia,* the Supreme Court explained that "a presumption of openness inheres in the very nature of a criminal trial under our system of justice." 448 U.S. 555, 573, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (plurality opinion). Among the guarantees of the First Amendment is the right of the public to attend criminal trials, without which "important aspects of freedom of speech and 'of the press could be eviscerated.'" *Id.* at 580, 100 S.Ct. 2814 (quoting *Branzburg v. Hayes,* 408 U.S. 665, 681, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)). In *Globe Newspaper Co. v. Superior Court,*

the Supreme Court explained that "[u]nderlying the First Amendment right of access to criminal trials is the common understanding that 'a major purpose of that Amendment was to protect the free discussion of governmental affairs.'" 457 U.S. 596, 604, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (quoting *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966)). Public criminal proceedings ensure that "judge and prosecutor carry out their duties responsibly." *Waller v. Georgia*, 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984).

■■ The right to openness in criminal proceedings may give way in certain cases to other rights or interests, such as the government's interest in inhibiting disclosure of sensitive information; but, "[s]uch circumstances will be rare, however, and the balance of interests must be struck with special care." *Id.* at 45, 104 S.Ct. 2210. "The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power"; and, "[w]ithout publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account." *In re Oliver*, 333 U.S. 257, 270–71, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

■ Openness in judicial proceedings "gives assurance that established procedures are being followed and that deviations will become known," enhancing "both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press–Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 508, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). The Supreme Court explained, in the context of a criminal jury proceeding, what sometimes is referred to as "community therapeutic value," saying:

> Criminal acts, especially violent crimes, often provoke public concern, even outrage and hostility; this in turn generates a community urge to retaliate and desire to have justice done. See T. Reik, The Compulsion to Confess 288–

295, 408 (1959). Whether this is viewed as retribution or otherwise is irrelevant. When the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions and emotions. Proceedings held in secret would deny this outlet and frustrate the broad public interest; by contrast, public proceedings vindicate the concerns of the victims and the community in knowing that offenders are being brought to account for their criminal conduct by jurors fairly and openly selected. See *United States v. Hasting*, 461 U.S. 499, 507, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *Morris v. Slappy*, 461 U.S. 1, 14–15, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).

> "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers [Inc. v. Virginia*, 448 U.S. 555,] 572, 100 S.Ct. 2814, 65 L.Ed.2d 973 [ (1980) ].

*Id.* at 508–09, 104 S.Ct. 819. The Supreme Court added that "[c]losed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness." *Id.* (footnote omitted).

■ For the presumption of openness in criminal proceedings to be overcome, an overriding interest must be shown, and any order denying openness must be "based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 510, 104 S.Ct. 819. After having recognized the First Amendment right of access to the records of criminal proceedings, the Fifth Circuit concluded in *United States v. Edwards* that "if closure of a presumptively open proceeding is to withstand a first amendment challenge ... the court [must] make specific, on-the-record, factfindings demonstrating that a substantial probability exists that an interest of a higher value

will be prejudiced and that no reasonable alternatives to closure will adequately protect that interest." 823 F.2d 111, 119 (5th Cir.1987), *cert. denied,* 485 U.S. 934, 108 S.Ct. 1109, 99 L.Ed.2d 270 (1988).

## B. *The Law Applied to This Case.*

 The court has found no authority, and does not believe any will be found, that a motion for downward departure in sentencing and related proceedings in a criminal action are not presumptively open proceedings. Few things would cause the public to be more suspicious of our system of criminal justice than to have secret proceedings that lead to special sentencing treatment for select criminal defendants. The public has a vital interest in knowing the details of deals made between the government and criminal defendants that accomplish, or have the potential to bring about, lower punishment than otherwise contemplated by law. If those aspects of a criminal case were to be kept secret, the public and the press would have reason to question the trustworthiness of the judicial process and whether judicial and prosecutorial abuses might be occurring.

As evidenced by the adoption of the Sentencing Reform Act of 1984, fairness in sentencing has high priority in our society. Disparate sentencings based on reasons and proceedings that are concealed from public view inevitably will raise questions about the basic fairness of the sentencing process. For the presumption in favor of public access to records and proceedings related to departures from the sentencing guidelines to be overcome, there must be a definitive showing that there is a higher interest to be served by secrecy. The government has failed to allege, much less make a showing of, any facts that would overcome that presumption in this case. The cherished policy of our nation that proceedings be open to the view of the press and the public would be offended if a motion to seal were to be granted in a case such as this.

There have been cases where legitimate reasons were shown why a motion for downward departure should be sealed, and undoubtedly there will be others in the future. The court would expect those reasons to be articulated in detail, based on allegations of specific facts, not generalities and conclusions, and would require that the facts upon which the motion to seal is based be verified by the affidavit or declaration of a person or persons having personal knowledge of the facts.

### III.

### *ORDER*

Therefore,

The court ORDERS that the government's motion to reconsider be, and is hereby, denied.