# PD-0614-15

No. PD-_____

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 18 2015

Abel Acosta, Clerk

I N   T H E

COURT OF CRIMINAL APPEALS OF TEXAS

JOSE AMILPAS,

Appellant-Petitioner

-vs-

THE STATE OF TEXAS,

Appellee-Respondent

ON PETITION SEEKING DISCRETIONARY REVIEW
OF COURT OF APPEALS NO. 01-14-00053-CR FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
AFFIRMING THE CONVICTION AND SENTENCE IN
TRIAL COURT CASE NO. 1334791 OUT OF
THE 174th JUDICIAL DISTRICT COURT OF HARRIS COUNTY, TEXAS

## PETITION FOR DISCRETIONARY REVIEW

JOSE AMILPAS, pro se
Robertson Unit, TDCJ No. 1908295
12071 FM 3522
Abilene, Texas  79601-8799

Appellant-Petitioner

## TABLE OF CONTENTS

**SECTION**                                                                                      **PAGE**

INDEX OF AUTHORITIES.............................................................ii

STATEMENT REGARDING ORAL ARGUMENT .............................................iv

STATEMENT OF THE CASE.......................................................... v

STATEMENT OF PROCEDURAL HISTORY............................................... v

GROUND FOR REVIEW:

      THE FIRST COURT OF APPEALS ERRED WHERE IT FAILED TO FIND, RES
      NOVA, THAT ARTICLE 18.21 OF THE TEXAS CODE OF CRIMINAL PROCE-
      DURE IS UNCONSTITUTIONAL, VIOLATING ARTICLE I, SECTIONS 9, 10,
      13, 19, AND 29 OF THE TEXAS CONSTITUTION; AND THE FOURTH, FIF-
      TH, SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CON-
      STITUTION, WHERE THE STATUTE DOES NOT CONTAIN A PROVISION FOR
      UNSEALING THE AFFIDAVIT, APPLICATION, AND ORDER FOR DISCOVERY
      AND DISCLOSURE PURPOSES OF PEN REGISTER INFORMATION.................... 1

ARGUMENT AND AUTHORITIES...................................................... 3

CONCLUSION.................................................................... 8

PRAYER FOR RELIEF............................................................ 10

VERIFICATION BY UNSWSORN DECLARATION......................................... 11

CERTIFICATE OF SERVICE....................................................... 12

APPENDIX..................................................................... 13

      MEMORANDUM OPINION OF THE FIRST COURT OF APPEALS — DALLAS, TEXAS
      Amilpas v. The State of Texas, No. 01-14-00053-CR (April 23, 2015)
      (not designated for publication).

# INDEX OF AUTHORITIES

## CASE CITATIONS

**PAGE**

Andrews v. Proctor, 950 S.W.2d 750 (Tex.App.-Amarillo 1997)................... 6

Belo Broadcasting Corp. v. Clark, 654 F.2d 423 (5th Cir. 1981)............... 7

City of Fort Worth v. Howerton, 149 Tex. 614, 236 S.W.2d 615 (1951).......... 6

Conley v. Daughters of the Republic, 106 Tex. 80, 156 S.W. 197 (1913)........ 5

Corsicana Cotton Mills v. Sheppard, 123 Tex. 352, 71 S.W.2d 247 (1934)....... 6

Cramer v. Sheppard, 140 Tex. 271, 167 S.W.2d 147 (1942)...................... 4

Durish v. Texas State Board of Insurance,
  817 S.W.2d 764 (Tex.App.-Texarkana 1991)................................... 6

Gallagher v. State, 690 S.W.2d 587 (Tex.Crim.App. 1985)...................... 4

Garrett v. Borden, 283 S.W.3d 852 (Tex. 2009).............................. 3

Heitman v. State, 815 S.W.2d 681 (Tex.Crim.App. 1991)....................... 9

Heyman; Ex parte, 45 Tex.Crim. 532, 78 S.W. 349 (1904)...................... 6

Holmes v. State, 323 S.W.3d 163 (Tex.Crim.App. 2010)........................ 7

Kimbrough v. Barnett, 93 Tex. 301, 55 S.W. 120 (1900)....................... 6

LeCroy v. Hanlon, 713 S.W.2d 335 (Tex. 1986)............................... 10

Lo; Ex parte, 424 S.W.3d 10 (Tex.Crim.App. 2013)........................... 9

Maryland v. Garrison, 480 U.S. 79, 107 S.Ct. 1013 (1987)............... 7-8, 11

Pittman v. Byars, 112 S.W. 102 (Tex.Civ.App. 1908).......................... 5

San Antonio & A.P. Ry. Co. v. State, 128 Tex. 33, 95 S.W.2d 680 (1936)....... 5

State v. Mazuca, 375 S.W.3d 294 (Tex.Crim.App. 2012)........................ 7

United States v. Raybould, 130 F.Supp.2d 829 (N.D. Tex. 2000)............... 7

Whitworth v. Bynum, 699 S.W.2d 194 (Tex. 1985)............................. 9

## CONSTITUTIONS, STATUTES, CODES, AND RULES

**PAGE**

U.S. CONST. amend. IV...................................................... 3

U.S. CONST. amend. V....................................................... 3

U.S. CONST. amend. VI...................................................... 3

U.S. CONST. amend. XIV .................................................... 3

TEX. CONST. art. I, § 9 ................................................... 3

**CONSTITUTIONS, STATUTES, CODES, AND RULES (continued)**     **PAGE**

TEX. CONST. art. I, § 10 .................................................... 3

TEX. CONST. art. I, § 13 .................................................... 3

TEX. CONST. art. I, § 19 .................................................... 3

TEX. CONST. art. I, § 29 .............................................. 3, 6, 10

TEX. CONST. art. V, § 3-b ................................................ 10

TEX. CODE CRIM. PROC. art. 18.011 ...................................... 5, 11

TEX. CODE CRIM. PROC. art. 18.21 ......................................passim

TEX. CODE CRIM. PROC. art. 18.21, § 2(g) ............................... 3, 4

TEX. CODE CRIM. PROC. art. 18.21, § 2(c) ............................... 5-6

TEX. CODE CRIM. PROC. art. 20.02 .......................................... 5

TEX. CODE CRIM. PROC. art. 39.04 ........................................ 5-6

TEX. CODE CRIM. PROC. art. 39.14 ........................................ 5-6

TEX. GOV. CODE, § 22.001(c) ............................................. 10

TEX. GOV. CODE, § 51.317 ................................................ 10

TEX. GOV. CODE, § 51.318 ................................................ 10

TEX. R. APP. PROC. 140 .................................................. 10

**TREATISES AND OTHER SOURCES**     **PAGE**

Carson; Wallace P., Jr., "Last Things Last:" A Methodological Approach to
    Legal Argument in State Courts, 19 WILLIAMETTE L. REV. 641 (1983) ....... 9

Mauer; John Walker, Southern State Constitutions in the 1870's:
    A Case Study of Texas 188-89, 204, 221-22, 246-48 (1981) ............... 8

Myres; Samuel D., Mysticism, Realism and the Texas Constitution of 1876,
    9 SW. SOC. SCI. Q. 166, 182-83 (1928) ................................ 8-9

Sager; Lawrence G., Foreword: State Courts and the Strategic Space Between
    the Norms and Rules of Constitutional Law, 63 TEX. L. REV. 959 (1985)... 10

Peters; Ellen A., Common Law Antecedents of Constitutional Law
    in Connecticut, 53 ALB. L. REV. 259 (1989) ........................... 6

## STATEMENT REGARDING ORAL ARGUMENT

Jose Amilpas, Petitioner pro se in this case, believes that oral argument will be absolutely necessary for being able to fully explain the underlying legal theories and argument demonstrating that Article 18.21 of the Texas Code of Criminal Procedure is unconstitutional, where there is no provision in the statute for having an application and order unsealed, where Article 18.21(g) make it mandatory that "the district court shall seal an application and order granted under this article." Where Article 18.01 governs the sealing of affidavits requesting search warrants, and Articles 18.011(c) and (d) govern the unsealing of affidavits so as not to "affect the right of a defendant to discover the contents of an affidavit;" and Article 20.02(d), of the Code of Criminal Procedure, which provides that a "defendant may petition a court to order the disclosure of information" contained in the records of a grand jury proceeding and "otherwise made secret by" Article 20.02; Article 18.21 is contrary to the provisions of the Code of Criminal Procedure that entitles a defendant to discovery of the contents of an affidavit, and "secret grand jury proceedings." Additionally, the Legislature's failure to include a provision for unsealing a record that had been sealed under Article 18.21(g), violates a long-line of precedents that had been set-in-stone by the Supreme Court of the United States.

In the event that this Court determines that oral argument is necessary, Petitioner respectfully moves the Court to invite one of the attorneys from the Texas Civil Rights Project to participate on Petitioner's behalf, in presenting oral argument.

_Jose Amilpas_
JOSE AMILPAS, Petitioner pro se

## STATEMENT OF THE CASE

Petitioner Jose Amilpas ("Amilpas") was charged with the felony offense of possession with intent to deliver a controlled substance. The charge was enhanced with two prior felony convictions. On January 7, 2014, he entered a plea of not guilty and proceeded to trial by jury. On that same day, the jury found Amilpas guilty as charged. Amilpas waived a punishment trial, and pursuant to an agreed recommendation by the State, the trial court sentenced him to thirty (30) years imprisonment in the Correctional Institutions Division of the Texas Department of Criminal Justice. Amilpas filed a timely notice of appeal on January 7, 2014. Mr. Jon Munier was appointed to represent Amilpas on appeal, but in the event of Mr. Munier's untimely death, the case was abated and remanded to the trial court for the appointment of substitute counsel. Amilpas's appeal was then submitted to a panel of Justices at the First Court of Appeals at Houston, in which he raised four issues: (1) and (2) complained that the statute authorizing the sealing of an application and order under Article 18.21 of the Texas Code of Criminal Procedure was unconstitutional where it did not also contain or provide a provision or means to allow a defendant to have the application and an order unsealed; and that the unconstitutionality of the statute deprived Amilpas of due process of law; (3) he contended that the evidence was legally insufficient to support his conviction; and (4) the trial court committed reversible error where it overruled the defense's objection to the prosecutor's improper argument during closing.

## STATEMENT OF PROCEDURAL HISTORY

This case was tried in the 174th Judicial District Court of Harris County, Texas, before the Honorable Ruben Guerrero, in which a guilty verdict was returned by the jury on January 7, 2014. Following the verdict on guilt, pursuant to an agreed recommendation by the State, Amilpas was sentenced by the court, to thirty (30) years imprisonment in the TDCJ. Amilpas then perfected a timely appeal, submitting his BRIEF OF APPELLANT on September 2, 2014; thereafter, the State submitted its BRIEF OF APPELLEE on November 25, 2014. The appellate pan-

el affirmed the judgment of the trial court and issued its opinion on April 23, 2014. Amilpas v. State, 01-14-00053-CR (Tex.App.-Houston [1st Dist.] 2014).[1]

On May 17, 2015, Amilpas submitted his first PETITIONER'S MOTION TO EXTEND TIME TO FILE PETITION FOR DISCRETIONARY REVIEW, requesting that the Court allow him until July 24, 2015, to file his petition.

On July 22, 2015, Amilpas submitted his PETITIONER'S MOTION REQUESTING, A SECOND EXTENSION OF TIME DURING WHICH TIME FOR FILING HIS PETITION FOR DISCRE-TIONARY REVIEW, requesting that the Court allow him until October 22, 2015, for submitting his petition.

Amilpas has herewith submitted a motion requesting a final extension of time under Rule 68.2(c)'s provision that allows the Court to grant an extension of time if Amilpas "files a motion complying with Rule 10.5(b) no later than 15 days after the last day for filing the petition." Amilpas had previously sought until October 22, 2015, for filing his petition, and that being the last day to file his petition, he had until November 6, 2015, to file this instant petition along with the attached motion seeking an extension of time of 15 days.

The CERTIFICATE OF SERVICE attahced hereto, certifies that this petition was deposited into the prison's internal Legal Mail system, under the Prison Mailbox Rule for mailing to the Clerk of the Court of Criminal Appeals, on Friday evening, November 6, 2015, in accordance with Rule 68.2(c)'s provision.

---

1    This is an unpublished MEMORANDUM OPINION that was not designated for publication by the appellate panel.

# GROUNDS FOR REVIEW

As required by the Texas Rules of Appellate Procedure, Petitioner indicates the specific rule provisions under which he asks that the Court of Criminal Appeals review the First Court of Appeals' decision and judgment, where:

> THE FIRST COURT OF APPEALS ERRED WHERE IT FAILED TO FIND, RES NOVA, THAT ARTICLE 18.21 OF THE TEXAS CODE OF CRIMINAL PROCEDURE IS UNCONSTITUTIONAL, VIOLATING ARTICLE I, SECTIONS 9, 10, 13, 19 AND 29 OF THE TEXAS CONSTITUTION, AND THE FOURTH, FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, WHERE THE STATUTE DOES NOT CONTAIN A PROVISION FOR UNSEALING THE AFFIDAVIT, APPLICATION, AND ORDER FOR DISCOVERY AND DISCLOSURE PURPOSES OF PEN REGISTER INFORMATION.

## REASONS FOR GRANTING DISCRETIONARY REVIEW

(b) Has the First Court of Appeals failed to decide an important question of State and federal law that has not been, but should be, settled by the Court of Criminal Appeals?  [Rule 66.3(b)]

(c) Has the First Court of Appeals' failure to decide an important question of State and federal constitutional law, resulted in a decision that conflicts with applicable decisions of the Court of Criminal Appeas and the Supreme Court of the United States?  [Rule 66.3(c)]

(d) Has the First Court of Appeals failed in its function as PROTECTOR of the Constitution when it misconstrued the construction of Article 18.21, and failed to recognize, sua sponte, that the statute was constitutionally invalid?  [Rule 66.3(d)]

(f) Has the First Court of Appeals' failure to decide a question of first impression regarding the constitutionality of Article 18.21, where it had itself noted the statute's deficiency, so far departed from the accepted and usual course of judicial proceedings, and so for sanctioned such a departure from the trial court that it calls for an exercise of the Court of Criminal Appeals' poser of supervision?  [Rule 66.3(f)]

Specifically, the First Court of Appeals' decision requires review by the Court of Criminal appeals because —

(1) The question of whether Article 18.21 is unconstitutional on confrontation and due process grounds, is a matter of **"first impression,"** as the statute does not harmonize with any other Texas statute authorizing the sealing of documents and records, as those statutes **ALSO** have provisions allowing a party to obtain access by unsealing the records for discovery, or confrontation purposes.

(2) The Court of Appeals' analysis and determination flies in the face of 137 years of Texas jurisprudence, where the appellate panel specifically identified, named, and pointed to the article's constitutional infirmity and took no action to sua sponte address it; where the Texas Court of Criminal Appeals long ago held that it is the Texas judi-

ciary that is the "traditional protector[s] of individual's constitutional rights."

(3) Lastly, the First Court of Appeals' reasoning, and especially the result of its inaction on an obvious constitutional question, is a "derelict upon the waters of the law," for the Court of Criminal Appeals had observed some 24 years ago that a "failure to **independently** construe state constitutional provisions" will eventually place the decision in "the hands of the Supreme Court of the United States which is not responsible to the State's electorate."

## ARGUMENT AND AUTHORITIES

**I.  PETITIONER'S SOLE ISSUE**

THE FIRST COURT OF APPEALS ERRED WHERE IT FAILED TO FIND, <u>RES NOVA</u>, THAT ARTICLE 18.21 OF THE TEXAS CODE OF CRIMINAL PROCEDURE IS UNCONSTITUTIONAL, VIOLATING ARTICLE I, SECTIONS 9, 10, 13, 19 AND 29 OF THE TEXAS CONSTITUTION; AND THE FOURTH, FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, WHERE THE STATUTE DOES NOT CONTAIN A PROVISION FOR UNSEALING THE AFFIDAVIT, APPLICATION, AND THE COURT'S ORDER, FOR DISCOVERY AND DISCLOSURE PURPOSES PERTAINING TO PEN REGISTER INFORMATION.

In its MEMORANDUM OPINION, the First Court of Appeals construed Amilpas' first issue on appeal to be that the trial court denying his request to unseal the affidavit, application, and court-order directing Sprint-Nextel to disclose information related to his cell phone, prevented him from evaluating the evidence against him, subpoenaing rebuttal witnesses, and of questioning potential witnesses, violated his right to confront witnesses guaranteed by the Texas and United States Constitutions. <u>See</u> APPENDIX (Memorandum Opinion) p. 3 [p. 4-5].[1] Regarding his second issue, the appellate panel ("panel") construed his ground of error to be that the same ruling of the trial court deprived him of due process of law. <u>Id.</u> p. 3 [p. 5].

In its discussion of the "applicable law," the panel determined that "the statute requires that '[t]he district court shall seal an application and order granted under this article' and includes no mention of any process by which the application or order may be unsealed." <u>Id.</u> p. 4 [p. 6] (citing TEX. CODE CRIM. PROC. art. 18.21, § 2(g)). Then in its "analysis," the panel makes the following observation:

As the State correctly notes, article 18.21, of the Code of Criminal Pro-

---

1    The First Court of Appeals' opinion that is the subject of this petition, is attached as an exhibit in the APPRNDIX of this petition. Petitioner had no means by which he could obtain a xerographic copy of the opinion, so, he produced a word-for-word copy by manual reproduction using a typewriter. <u>See</u> <u>Garrett v. Borden</u>, 283 S.W.3d 852 (Tex. 2009). Petitioner cites and quotes the typewritten opinion as follows: APPENDIX p. first reference is to the pagination as typed at the bottom of the page [p. **the BOLD reference in brackets is Court of Appeals' pagination of the Court's MEMORANDUM OPINION**].

cedure makes no mention of the circumstances under which an order for the disclosure of pen register information may be unsealed.

APPENDIX p. 6 [p. 9] (citing TEX. CODE CRIM. PROC. ANN. art. 18.21, §2(g) ("The district court shall seal an application and order granted under this article," in which a police officer seeks order for information related to cell tower records)). The panel correctly concluded that "Amilpas DOES NOT contend that the trial court's refusal to unseal the order violated article 18.21 of the Code of Criminal Procedure." Id. (emphasis added). The panel then correctly recognized that Amilpas' complaints were founded upon violations of the State and federal constitutions. To frame the issue concisely, Amilpas was deprived of discovery where it was article 18.21 itself, that violated the constitutional provisions. The panel itself identified the constitutional infirmity, and that is that article 18.21 "makes no mention" of how a defendant may have the records unsealed.

Article 18.21 is "vague" on its face where it does not specifically state that documents sealed by order of the court under article 18.21(g), can or cannot somehow be unsealed upon a defendant's request. The approach this Court is to take in order to resolve the vagueness of the language of article 18.21 will be, first, that it is not to be given a "technical construction which would defeat" the statute's purpose. Cramer v. Sheppard, 140 Tex. 271, 284-85, 167 S.W.2d 147, 154 (1942). Where, here, the statute is open to more than one understanding, either the sealed records may be unsealed, or they cannot, it is not to be "so construed or interpreted as to lead to absurd conclusions, if any other interpretation or construction can reasonably be indulged in." Id. at 294, 167 S.W.2d at 159 (Alexander, C.J., dissenting). This Court should also avoid construing a statutory provision so as to render it ambiguous or contradictory to another statute. Gallagher v. State, 690 S.W.2d 587, 591-92 (Tex.Crim.App. 1985) (en banc).

The same standards apply when interpreting different statutory provisions that appear to conflict with each other. This Court must first determine whether it is possible to harmonize the provisions by a reasonable construction.

-4-

See <u>San Antonio & A.P. Ry. Co. v. State</u>, 128 Tex. 33, 42, 95 S.W.2d 680, 685 (1936) (holding that where provisions cannot be harmonized, more specific provision is to control); <u>Conley v. Daughters of the Republic</u>, 106 Tex. 80, 92, 156 S.W. 197, 201-02 (1913) (stating that statutes relating to same subject are to be taken together so effect may be given to each); <u>Pittman v. Byars</u>, 112 S.W. 102, 106 (Tex.Civ.App. 1908, no writ) (reasoning that similar language in present and in earlier statute, gives rise to presumption that earlier interpretations of con-structions of language controls).

Article 18.21 is in the chapter of the Code of Criminal Procedures estab-lishing the procedures for securing search warrants from the courts. Article 18.011 covers the sealing of affidavits presented to the court for demonstrat-ing the specific requirements for obtaining a warrant; and the statute also ad-dresses the procedures for "unsealing" an affidavit and court order:

> On the expiration of an order issue under Subsection (b) and any exten-the affidavit must be unsealed.
>
> An order issue under this section **may not:**
> (1) prohibit the disclosure of information relating to the contents of a search warrant, the return of a search warrant, or the inventory of property taken pursuant to a search warrant; **or**
>
> (2) **AFFECT THE RIGHT OF A DEFENDANT TO DISCOVER THE CONTENTS OF AN AF-FIDAVIT.**

TEX. CODE CRIM. PROC. ANN. art. 18.011(c) & (d) (Vernon 2010) (emphasis added).

Chapter 20 of the Code of Criminal Procedrue covers the Duties and Powers of the Grand Jury, and Article 20.02(a) mandates that "[t]he proceedings of the grand jury shall be secret." However, the statute does provide that a defend-ant "may petition a court to order the disclosure of information otherwise made secret by this article...." TEX. CODE CRIM. PROC. ANN. art. 20.02(d).

Articles 18.011 (c) & (d); and 20.02(d) demonstrate that Article 18.21, in order to harmonize, should have included a provision for unsealing the affidav-it, application, and court order. As it stands, Article 18.21 is unconstitu-tional for not having a provision extending to the defendant "the right to dis-cover" the instrument "made in writing under oath," pursuant to Article 18.21 § 2(c)(1), and consistent with Chapter 39 Of the Code of Criminal Procedure that

mandates that a defendant is entitled to discovery. See TEX. CODE CRIM. PROC. ANN. art. 39.14(a); see also art. 39.04 (Applicability of Civil Rules).

The Justices of the panel hearing Amilpas' appeal, identified the infirmity of Article 18.21, and that was the absence of a provision permitting a criminal defendant unfettered discovery of affidavits, applications, and orders of the court that had previously been sealed. The Justices of the panel have "not only the right, **BUT THE DUTY**, to challenge actions to be taken pursuant to any statute that is unconstitutional." Durish v. Texas State Board of Insurance, 817 S.W.2d 764, 767 (Tex. App.- Texarkana 1991, no pet.) (emphasis added). The Constitution is the supreme law of the State, and all public officials, including justices and judges of the courts, are sworn to uphold and defend it. The State represents the people, and when justices and judges of the courts seek to enforce the constitutional provision of Article I, Section 29, that the Bill of Rights is to "forever remain inviolate," the judiciary is protecting the people from illegal, oppressive, and unjust laws. Corsicana Cotton Mills v. Sheppard, 123 Tex. 352, 71 S.W.2d 247 (1934); see also Andrews v. Proctor, 950 S.W.2d 750 (Tex.App.-Amarillo 1997, reh'g overruled, review granted, reversed) (State government officials on all levels have not only the right but also the duty to challenge the validity of a statute that is unconstitutional). See, e.g., City of Fort Worth v. Howerton, 149 Tex. 614, 620, 236 S.W.2d 615, 618 (1951) (holding that, legislature cannot pass laws which are contrary to the constitution); Kimbrough v. Barnett, 93 Tex. 301, 313, 55 S.W. 120, 123 (1900) (stating that a court is bound to follow the constitution framed by the people). No amount of acquiescence can legalize usurpation of power, or thwart the will of the people which is plainly expressed in the constitution. See Ex parte Heyman, 45 Tex. Crim. 532, 543, 78 S.W. 349, 354 (1904). Many of the provisions of the Texas Constitution, owe their beginnings to the "common-law." Ellen A. Peters, Common Law Antecedents of Constitutional Law in Connecticut, 53 ALB. L. REV. 259, 261 (1989) (explaining that many constitutional rights had "common law" antecedents). A defendant "has a common-law right to inspect and copy judicial rec-

cords." United States v. Raybould, 130 F.Supp.2d 829, 831 (N.D. Tex. 2000); Belo Broadcasting Corp. v. Clark, 654 F.2d 423 (5th Cir. 1981) (The right of having access to the court's record derives not from the Constitution, but rather, common-law right of access that predates the Constitution itself). Where there is a right to discovery inferred in statutes that requires sealed records to be unsealed embodied in other state statutes, it was apparently an oversight where the Legislature failed to include such a provision in Article 18.21.

Where the panel explained that it was because Article 18.21 did not, anywhere, contain a provision for unsealing the record, it was THAT absence which operated to deprive Amilpas of the only defense that he really had. See BRIEF FOR APPELLANT, pp. 6-13. The Court of Criminal Appeals recognized the severity of such a deprivation:

> [T]he denial of the right to present a defense is a violation of due process and results in constitutional error. [...] Under Texas Rule of Appellate Procedure 44.2(a), if the record reveals a constitutional error, [this court] must reverse a judgment of conviction unless [it] determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

BRIEF FOR APPELLANT, p. 11 (quoting Holmes v. State, 323 S.W.3d 163, 173-74 (Tex. Crim.App. 2010)). The appellate panel concluded that any constitutional error "would have been harmless beyond a reasonalbe doubt." MEM. OP. p. 10. However the panel should have used the "but for" standard of review instead of Mazuca, because it would have had to if the panel had found that Article 18.21 itself was unconstitutional where it denied a defendant of document crucial to a defense. Amilpas was entitled to know whether the affidavit and application had been legally sufficient by law, complying with the requirements of Article 18.21(e). The validity of the affidavit and application must be assessed on the basis of the information that the requesting officers disclose, or have a duty to disclose, to the issuing judge; the constitutionality of the officers' conduct must be judged in light of the information available to them at the time they request an order under Article 18.21; and those items of evidence that emerge after the order is issued, have no bearing on whether the order was val-

idly issued.  See Maryland v. Garrison, 480 U.S. 79, 107 S.Ct. 1013 (1987).

Because Article 18.21 does not contain a provision allowing the record to be unsealed, so that a defendant may exercise his right to discovery, the Court of Criminal Appeals should find that Article 18.21 is unconstitutional, violating the Texas Bill of Rights, to wit: Section 9 (providing that no order will issue unless it is supported by a sworn oath or affirmation); Section 10 (a defendant has the right to confront his accusers and to have discovery of the evidence against him); Section 13 (all courts shall be open, as concealed and any documents hidden is disfavored); Section 19 (the defendant is entitled to being "due course of the law of the land" which also disfavors concealed documents); and Section 29 (the "Bill of Rights" is excepted out of the general powers of government and shall forever remain inviolate, and all laws contrary thereto or to the following provisions, shall be void).  And, as well, violates the Fourth (court order can issue only upon sworn affidavit or application); Fifth (defendant entitled to being accorded "due process of law."); Sixth (entiltled to being accorded confrontation and discovery); Fourteenth (no law permitted that abridge the laws and constitution, and being accorded due process) Amendments of the United States Constitution.

## C O N C L U S I O N

The framers of the Texas and United States Constitutions, and the voters over the years historically assigned to courts the function of interpreting and developing the law.  In Texas, the 1875 convention delegates had clearly intended for judges to have plenary power to protect the people's rights.  The delegates distrusted the legislative and executive branches and deliberately diffused and narrowly circumscribed their powers in the 1876 constitution.  See John Walker Mauer, Southern State Constitutions in the 1870's: A Case Study of Texas 188-89, 204, 221-22, 246-48 (1981) (unpublished Ph.D. dissertation, on file with St. Mary's Law Journal) (analyzing historical and political forces behind 1876 constitution).  The delegates placed checks on judicial power by requiring judges to be popularly elected.  Id. at 192, 236, 246-48; cf. Samuel D. Myres,

Mysticism, Realism and the Texas Constitution of 1876, 9 SW. SOC. SCI. Q. 166, 182-83 (1928) (concluding that constitution of 1876 imposed serious limitations upon power of government rendering it practically a government of negation).

There are several arguments in favor of the popular election of judges as it creates an accountability that lends their office to constitutional development. When a judge vigorously construes the State constitution, the voters can accept or reject that interpretation through the electoral process. See Heitman v. State, 815 S.W.2d 681, 688 (Tex.Crim.App. 1991) (holding that failure to independently construe state constitutional provisions places decision in hands of Supreme Court of the United States which is not responsible to electorate). The direct participation of the electorate in selecting judges is vital to the development of Texas constitutional law. Consequently, the election of judges is not a happenstance event. See, e.g., Ex parte Lo, 424 S.W.3d 10 (Tex.Crim. App. 2013).

The difference in institutional roles between the State and federal judiciaries provides a second argument in favor of the popular election of judges. See Wallace P. Carson, Jr., "Last Things Last:" A Methodolgical Approach to Legal Argument in State Courts, 19 WILLAMETTE L. REV. 641, 647 (1983) (providing argument in favor of primacy of Oregon Constitution). Federal courts possesses circumscribed jurisdiction and the fact that they set nationally oberved norms, serves as a conservative influence. State courts, on the other hand, historically have had jurisdiction over virtually all matters: landlord-tenant law, family law, property rights, water rights, contracts, criminal law, and so on. Their day-to-day expertise supports the contention that state judges should play a substantial role in protecting constitutional rights, most particularly those "within a subject area uniquely appropriate for a state's judiciary." Whitworth v. Bynum, 699 S.W.2d 194, 196 (Tex. 1985); see Heitman, 815 S.W.2d at 686 (discussing the state's judiciary as traditional protector of individual's constitutional rights).

A third argument for state court vigilance is that if a judge hands down an undersirable ruling, the legislature can address the ruling either by sta-

tute, or by initiating the constitutional amendment process. Compare TEX. GOV. CODE ANN. §§ 51.317, 51.318 (Vernon 1988) (reinstating revised Omnibus Fee Bill) with LeCroy v. Hanlon, 713 S.W.2d 335, 338 (Tex. 1986) (finding original Omnibus Fee Bill unreasonably interfered with right of access to court). The Texas experience has shown it much easier to amend the State constitution than to amend the federal constitution. This "legislative oversight" function favors activist courts because it presents the judiciary as a partner with the other branches of Texas government in protecting individual rights. See Lawrence G. Sager, Foreword: State Courts and the Strategic Space Between the Norms and Rules of Constitutional Law, 63 TEX. L. REV. 959, 976 (1985) (discussing that state judiciaries have been more willing to exercise the legislative oversight function than federal courts).

The constitutional amendment that allows a direct appeal to the Texas Supreme Court or the Court of Criminal Appeals on constitutional issues, provides another structural rationale for State judicial oversight. See TEX. CONST. art. V, § 3-b; TEX. GOV. CODE ANN. § 22.001(c) (Vernon 1987); TEX. R. APP. P. 140 (Vernon 2013). This mechanism facilitates quick resolution of important questions, and indicates that the drafters and voters expect the courts to play a vigorous and active role in constitutional development.

Amilpas has shown this Honorable Court of Criminal Appeals that there can be no doubt that Article I, Section 29 of the Texas Constitution mandates that Article 18.21 of the Code of Criminal Procedure be voided as being unconstitutional on the basis that the statute does not contain a provision for unsealing the affidavit, application, and court order, for purposes of discovery.

In its MEMORANDUM OPINION, the panel of the First Court of Appeals identified the invalidity of Article 18.21, yet, even though empowered to do so sua sponte, even though it had not only the constitutional power to do so, but also the DUTY to exercise its "Legislative oversight" function; and by not doings so the appellate panel committed plain error.

## P R A Y E R

**WHEREFORE, PREMISES CONSIDERED,** Jose Amilpas respectfully prays that this most Honorable Court of Criminal Appeals concludes that the panel of the First Court of Appeals committed reversible error where it failed to, _sua sponte,_ find that Article 18.21, of the Texas Code of Criminal Procedure, is unconstitutional on "vagueness" grounds, where it is unclear whether or not the documents the court ordered sealed pursuant to the article, could be unsealed in order to enable a defendant in "discovery," consistent with the provisions of Art. 18.011 (d)(1) & (2), TEX. CODE CRIM. PROC. ANN (Vernon 2013).

**FURTHER,** Petitioner Amilpas prays that this Court will remand this appeal for a determination on whether the affidavit, application, and court order used to authorize police to access Amilpas' cell phone's GPS function, were statutorily and constitutionally compliant, in accordance with _Maryland v. Garrison,_ 480 U.S. 79, 107 S.Ct. 1013 (1987).

**ALTERNATIVELY,** Amilpas prays the Court will grant review on the question of the constitutionality of Article 18.21, and its affect on the case, and will order "briefing" on the merits.

Respectfully submitted,

_[signature]_

JOSE AMILPAS, Petitioner pro se
Robertson Unit, TDCJ No. 1908295
12071 FM 3522
Abilene, Texas 79601-8799

### VERIFICATION BY UNSWORN DECLARATION

I, Jose Amilpas, TDCJ-CID No. 1908295, being presently incarcerated at the Robertson Unit of the Correctional Institutions Division of the Texas Department of Criminal Justice, declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this, the FIFTH day of NOVEMBER, 2015.

_[signature]_

JOSE AMILPAS

-11-

## CERTIFICATE OF SERVICE

I hereby certify and declare that a true and correct carbon copy of the attached PETITION FOR DISCRETIONARY REVIEW, has been served on the following individuals on the SIXTH day of NOVEMBER, 2015, by placing same into the prison's internal Legal Mail System for delivery by regular U.S. Postal Service first class mail, enclosed in postpaid and properly addressed envelopes, mailed to:

Ms. Jessica Caird, Esq.
Assistant District Attorney
Harris County District Attorney's Office
1201 Franklin Street, suite 600
Houston, Texas 77002

and

Ms. Lisa McMinn, Esq.
State Prosecuting Attorney
P.O. Box 13046 -- Capitol Station
Austin, Texas 78711-3046

DATED: 05 NOVEMBER 2015

_Jose Amilpas_
JOSE AMILPAS

-12-

**A P P E N D I X**

NO. 01-14-00053-CR

JOSE AMILPAS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 174th District Court
Harris County, Texas
Trial Court Case No. 1334791

## MEMORANDUM OPINION

Opinion issued April 23, 2015

Appellant Jose Amilpas was charged by indictment with fellony possession of more than four grams and less than 200 grams of cocaine with intent to deliver. The indictment included two enhancement allegations for felony possession of a controlled substance and felony possession of a weapon. After a jury found [2] Amilpas guilty, Amilpas and the State agreed to a plea bargain on sentencing — 30 years' confinement. Once Amilpas pleaded true to the enhancement allegations, the trial court sentenced him to 30 years' confinement in prison, in accordance with the plea bargain. On appeal, Amilpas contends that the evidence was legally insufficient to support his conviction. Amilpas also complains that the trial court erred by (1) denying his request to unseal the court order requiring Amilpas's cell phone service provider to disclose to police data allowing them to ascertain the location of his cell phone and (2) overruling his objection to the prosecutor's allegedly improper argument during closing. We affirm.

## Background

On January 11, 2012, Houston Police Department's East Side Tactical Unit began searching for Amilpas to serve an arrest warrant for a felony evading arrest charge. Unable to locate Amilpas, they requested assistance from Officer Vigil of the Houston Police Department Criminal Intelligence Division.

Officer Vigil testified that, on January 26, 2012, his division obtained a "probable cause based court order," signed under seal by a judge, which ordered Sprint-Nextel to provide information regarding Amilpas's cell phone. Specifically, Officer Vigil obtained information showing the signal strength from various cell towers in relation to Amilpas's phone and used it to triangulate possible locations [3] of Amilpas's cell phone. Based on this data, Officer Vigil formed the belief that Amilpas could be found at a local cell phone store.

Officer Vigil and Sergeant Vega of the Houston Police Department drove to the store, where Officer Vigil saw and recognized Amilpas and entered the store with Sergeant Vega immediately behind him. Officer Vigil testified that he identified himself as a Houston police officer as he entered the store. At that point, Amilpas turned around, reached into his waistband, and threw a small object over the store counter. Officer Vigil also testified that there were at least two other people in the store, but neither was standing near Amilpas and he did not see either of them throw anything into the area where Amilpas had thrown the object.

Sergeant Vega's testimony was consistent with Officer Vigil's. He testified that Amilpas looked "surprised" when he and Officer Vigil entered the store. When Sergeant Vega identified himself as an officer and directed Amilpas to "get on the ground," Amilpas did not comply. Rather, he turned around, reached into his waistband, pulled out what appeared to be a knife, and threw it over the counter before complying with the officers' commands to get on the ground. Vega testified that he saw the general area in which the object landed and that Amilpas' girlfriend was standing by the counter talking to a store

employee, which was not "very close" to Amilpas.

[4]   After Amilpas was handcuffed, Sergeant Vega directed Officer Yanez of the Houston Police Department to find the object that Amilpas had thrown over the counter. Officer Yanez testified that he walked behind the counter to the location where Sergeant Vega said that Amilpas had thrown an object, and he found a clear plastic bag, which contained seven smaller bags. The smaller bags contained a powdery substance, which Officer Yanez believed was cocaine. The officers also found that Amilpas was carrying $3,070 in cash.

Mona Colca, a criminalist with the Houston Police Department Crime Laboratory, tested the powdery substance recovered at the scene and determined that it was 64.7 grams of cocaine. The lab report containing the test results was admitted at trial.

Officer Aguirre of the Houston Police Department testified that finding that quantity of cocaine packaged in seven individual bags and $3,070 in cash on a defendant's person indicates that the defendant is a drug dealer and intends to sell the individual bags of cocaine. According to Officer Aguirre the cocaine had an approximate street value of $2,200 to $3,000.

## Sealed Court Order for Disclosure of Amilpas's Cell Phone Information

In his first and second issues Amilpas complains that the trial court erred in denying his request to unseal the court order directing Sprint-Nextel to disclose Amilpas's cell phone data. He contends in his first issue that this prevented him [5] from evaluating the evidence against him, subpoenaing rebuttal witnesses, and questioning witnesses in violation of his right to confront witnesses, guaranteed by the Sixth Amendment of the United States Constitution, and Article 1 Section 10 of the Texas Constitution. In his second issue, Amilpas argues that the same ruling deprived him of due process of law.

## A.   Applicable Law

Section 18.21 of the Texas Code of Criminal Procedure provides that a police officer from an incorporated area may seek, by court order signed by a

district judge, pen register information, trap and trace devices, and mobile tracking devices. TEX. CODE CRIM. PROC. ANN. art. 18.21 (West Supp. 2014). A pen register "means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or a facility from which a wire or electronic communication is transmitted if the information does not include the contents of the communication." TEX. CODE CRIM. PROC. ANN. art. 18.21, § 1(6) (West Supp. 2014). A prosecutor with jurisdiction in a county "may file an application for the installation and use of a pen register...." Id. § 2(a) (West Supp. 2014). The application must be in writing, under oath, include the subscriber name, information, telephone number, and location of the device and "state that the installation and use of the device or equipment will likely produce information that is material to an ongoing criminal investigation." Id. § 2(c).

> "on [6] presentation of the application, the judge may order the ... use of the pen register ... and, on request of the applicant, the judge shall direct in the order that a communication common carrier or a provider of electronic communications service furnish all information, facilities and technical assistance necessary to facilitate the installation and use of the device...."

Id. § 2(d). Additionally, the statute requires that "[t]he district court shall seal an application and order granted under this article," and includes no mention of any process by which the application or order may be unsealed. Id., § 2 (g).

Article 38.23(a) of the Code of Criminal Procedure provides that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23-(a) (West 2005). The primary purpose of article 38.23(a) is to deter unlawful actions that violate the rights of criminal suspects in the acquisition of evidence for prosecution. Wilson v. State, 311 S.W.3d 452, 459 (Tex.Crim.App. 2010).

However, if the evidence seized is sufficiently attenuated from the vio-

lation of the law the evidence is not considered to be obtained in violation of the law for the purposes of article 38.23. **Johnson v. State,** 871 S.W.2d 744, 750 (Tex.Crim.App. 1994). To determine whether the discovery of physical evidence is [7] sufficiently attenuated from the violation, we consider: (1) the temporal proximity of the violation of law and the seizure of physical evidence (2) the presence of intervening circumstances, and (3) the purposefulness or flagrancy of the police misconduct. **See State v. Mazuca,** 375 S.W.3d 294, 301-07 (Tex.Crim.App. 2012).

In **Mazuca,** the trial court found that the officers' stop of the car in which Mazuca was a passenger was illegal. **Id.,** at 296-97. Accordingly, the trial court suppressed ecstasy that the officers discovered in Mazuca's pocket during the detention, and the court of appeals affirmed. **Id.,** at 298-99. The Court of Criminal Appeals reversed, concluding that the discovery of the ecstacy was sufficiently attenuated from the illegal stop. **Id.,** at 308. The Court of Criminal Appeals reasoned that the officers' discovery of Mazuca's outstanding arrest warrants between the time they made the illegal stop, and the time they found the ecstasy, was an intervening circumstance and the officers' misconduct was not "particularly purposeful and flagrant." **Id.**

## B.  Analysis

Amilpas's counsel first learned during trial of the existence of the order directing disclosure of Amilpas's cell tower data. Amilpas's counsel argued that had he known of the order earlier, he would have moved to suppress any evidence that the officers discovered after arriving at the cell phone store. Amilpas argued [8] that the officers' use of Amilpas's cell phone data to locate him constituted an illegal search. He requested that the trial court unseal the order and he moved for a continuance. The trial court denied Amilpas's motions to suppress and for continuance.

Amilpas relies on **United States v. Jones,** 132 S.Ct. 945 (2012), to argue for reversal. In **Jones,** the Supreme Court held that the government's placement of a GPS tracking device on a subject's vehicle, and subsequent use of informa-

tion obtained from the GPS device to secure his arrest warrant [sic] amounted to an illegal search in violation of the Fourth Amendment. **Id.**, at 947–49. Two significant factors distinguish **Jones** from this case. First, in **Jones** the government tracked the vehicle's movements in an effort to secure evidence to obtain an indictment for drug trafficking conspiracy charges. **Id.**, at 946. Here, a warrant for Amilpas's arrest for evading arrest had issued before police obtained Amilpas's cell phone data, and the police requested and used the cell phone data, merely to locate Amilpas in order to execute the outstanding arrest warrants. Second, in **Jones**, the government obtained information about the defendant's location by mounting a GPS tracking device to his vehicle. **Id.**, at 949. Here, Sprint-Nextel complied and stored Amilpas's cell phone data for its own business purposes, and Officer Vigil obtained that data from Sprint-Nextel, rather than gathering the data himself. **See Barfield v. State,** 416 S.W.3d 743, 748-49 (Tex. App.-Houston [14th Dist.] 2013, [9] no pet.) (trial court did not violate the exclusionary rule in admitting cell tower records and expert testimony, because police obtaining information and data related to appellant's cell phone that third-party cell phone provider had collected and stored for its own business purposes did not violate appellant's reasonable privacy expectations under the Fourth Amendment). Accordingly **Jones** is distinguishable and does not support Amilpas's argument.

As the State correctly notes, article 18.21, of the Code of Criminal Procedure, makes no mention of the circumstances under which an order for the disclosure of pen register information may be unsealed. **See** TEX. CODE CRIM. PROC. ANN. art. 18.21, § 2(g) ("The district court shall seal an application and order granted under this article," in which a police officer seeks order for information related to cell tower records). That does not end the inquiry, however, because Amilpas does not contend that the trial court's refusal to unseal the order violates article 18.21 of the Code of Criminal Procedure. Rather, Amilpas's complaints are constitutional. But, even constitutional errors must be harmful to warrant reversal. TEX. R. APP. P. 44.2(a) (constitutional errors war-

rants reversal, "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment"). Here, we need not decide whether any of Amilpas's claims of constitutional error have merit, because even assuming that the trial [10] court's refusal to unseal the article 18.21 order amounted to a constitutional error, we conclude that it would have been harmless beyond a reasonable doubt.

Mazuca guides our analysis of whether Amilpas can show harm resulting out of an alleged constitutional error. It sets forth a three-factor test we use to determine whether discovery of physical evidence is too attenuated from a violation of law to warrant suppression. See Mazuca, 375 S.W.3d at 301-07. The first of the three factors we consider is the temporal proximity of the violation of law and the seizure of physical evidence. See id. at 306. Here, the officers seized the cocaine within only a few moments of locating Amilpas using the pen register data. Thus, this factor in isolation favors suppression. See McKinney v. State, 444 S.W.3d 128, 135 (Tex. App.-San Antonio 2014, pet. ref'd) (temporal proximity weighed in favor of suppression where officer searched defendant and found cocaine immediately after detaining him). However, as the Court of Criminal Appeals recognized in Mazuca, this factor "will sometimes prove to be, in the context of the seizure of physical evidence, 'the least important factor'—at least relative to the other two." Mazuca, 375 S.W.3d at 306.

Under the second Mazuca factor, we consider the presence of intervening circumstances—that is, we consider what occurred between the time the suspect was detained using the pen register data and the time the challenged evidence was seized. Id. at 306. Here, the officers observed Amilpas commit a crime—[11] possession of cocaine—in the cell phone store between the time they arrived to execute the arrest warrant for evading arrest and the time they seized the cocaine. Thus, even assuming police obtained the article 18.21 order, and located Amilpas in violation of law, their observations of Amilpas committing the charged offense was a significant intervening circumstance between the time

-7-

of the purported violation of law and the discovery of evidence. We conclude that this factor weighs against suppression. **See Mazuca,** 375 S.W.3d at 306 (recognizing that evidence need not be suppressed where there are intervening circumstances between the discovery of physical evidence and the violation of the law); **Roberts v. State,** No. 03-12-00194-CR, 2014 WL 1910428, at *1-2 (Tex.App.-Austin May 8, 2014, no pet.) (mem. op., not designated for publication) ("need not address the propriety of [officer's] actions" where officer initially stopped appellant without justification, but subsequently observed appellant drive with headlights off, which was a violation of the law that independently justified the stop); **Matienza v. State,** 699 S.W.2d 626, 628 (Tex. App.-Dallas 1985, pet. ref'd) (after officer detained defendant, defendant pulled gun and pointed it at officer, which constituted intervening offense that purged taint of any illegality of initial detention).

Under the third **Mazuca** factor, we consider the purposefulness or flagrancy of the police misconduct. **See Mazuca,** 375 S.W.3d at 306 (considering "whether the police have deliberately perpetrated what they knew would be an unlawful stop in the [12] specific hope or expectation that it will generate some legitimate after-the-fact justification to arrest and/or search, or they have otherwise conducted themselves in particularly egregious disregard of the right to privacy and/or personal integrity that the Fourth Amendment protects"). Here, the officers obtained the order directed to Sprint-Nextel, in accordance with the statute's terms, and acted pursuant to the order in locating Amilpas to execute his arrest warrant for evading arrest. We conclude that there is no indication in the record that the officers engaged in misconduct of any sort. **See Mazuca,** 375 S.W.3d at 310 (behavior was not so particularly purposeful or flagrant that intervening factor could not purge the taint where officer "never went beyond the bounds of what would have been constitutionally permissible had the stop been justified at its inception").

Having considered all three Mazuca factors, we conclude that the significant intervening circumstance between the officers' detention of Amilpas, and

-8-

their seizure of the challenged evidence — their observation of Amilpas possessing cocaine — together with the absence of any misconduct on the part of police renders the evidence sufficiently attenuated from the alleged violation of law in obtaining and failing to disclose the contents of the article 18.21 order that the trial court would not have erred in denying a motion to suppress the cocaine even if Amilpas had learned of and challenged the article 18.21 order pre-trial. For the same reason, we overrule Amilpas's arguments that the trial court's failure to unseal the [13] article 18.21 order violated his right to evaluate evidence against him, subpoena rebuttal witnesses, and to confront witnesses, as well as his right to due process of law. Because any theoretical infirmity in the article 18.21 order would have been sufficiently attenuated from the seizure of evidence under **Mazuca**, article 38.23 would not require suppression. Accordingly, we hold that constitutional error in the trial court's refusal to unseal the court order, if any, would have been harmless beyond any reasonable doubt. **See** TEX. R. APP. P. 44.2(a).

We overrule Amilpas's first and second issues.

## Sufficiency of the Evidence

In his third issue, Amilpas contends that the evidence was legally insufficient to support his conviction.

### A. Standard of Review

Evidence is insufficient to support a conviction if, considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt. **Gonzalez v. State**, 337 S.W.3d 473, 478 (Tex. App.-Houston [1st Dist.] 2011, pet. ref'd) (citing **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979)). We determine whether the necessary inferences are reasonably based upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict. **Clayton v. State**, 235 S.W.3d [14] 772, 778 (Tex.Crim.App. 2007) (quoting **Hooper v. State**, 214 S.W. 3d 9, 16-17 (Tex.Crim.App. 2007)). When the record supports conflicting infer-

ences, we presume that the factfinder resolved the conflicts in favor of the verdict, and defer to that resolution. **Jackson,** 443 U.S. at 326, 99 S.Ct. at 2793; **Clayton,** 235 S.W.3d at 778. We likewise defer to the factfinder's evaluation of the credibility of the evidence and the weight to give the evidence. **Gonzalez,** 337 S.W.3d at 479 (citing **Williams v. State,** 235 S.W.3d 742, 750 (Tex. Crim.App. 2007)). The reviewing court must also "consider all evidence which the jury was permitted, whether rightly or wrongly, to consider." **Thomas v. State,** 753 S.W.2d 688, 695 (Tex.Crim.App. 1988) (en banc) (emphasis omitted).

## B. Applicable Law

To prove unlawful possession of a controlled substance, the State must prove, beyond a reasonable doubt, that the defendant exercised control, management, or care over the substance and that he knew the matter possessed was contraband. **Poindexter v. State,** 153 S.W.3d 402, 405 (Tex.Crim.App. 2005). Regardless of whether the evidence is direct or circumstantial it must establish that a defendant's connection to the contraband was more than fortuitous. **Id.,** at 405-06. This "affirmative links rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." **Id.** at 406 (internal quotation omitted). Thus, "[w]hen the defendant is not in [15] exclusive possession of the place where the substance was found it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." **Deshong v. State,** 625 S.W.2d 327, 329 (Tex.Crim.App. [Panel Op.] 1981) (citing **Wiersing v. State,** 571 188, 190 (Tex.Crim.App. 1978)).

Though not an exhaustive list, the Court of Criminal Appeals has recognized the following affirmative links:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or

drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

Evans v. State, 202 S.W.3d 158, 162 n.12 (Tex.Crim.App. 2006); see also Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd). It is not the number of links that is dispositive, but rather the logical force of all the evidence, both direct and circumstantial. Evans, 202 S.W.3d at 162. Therefore, each case must be examined according to its own facts, on a case-by-case basis. [16] Robertson v. State, 80 S.W.3d 730, 736 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). A factor that contributes to sufficiency in one situation may be of little value under a different set of facts. Id.

C. Analysis

Amilpas contends that there is legally insufficient evidence to support his conviction because the police officers did not see that the item he threw over the counter was cocaine, there was evidence that the item he threw was a knife, and there is no evidence of several affirmative links.

We conclude sufficient evidence connects Amilpas with the cocaine. First Amilpas was present at the scene when police arrived. See Evans, 202 S.W.3d at 162, n. 12 (presence when search conducted is affirmative link). Second, Officer Vigil and Sergeant Vega both testified that Amilpas would not obey their commands until after he removed an object from his clothing and threw it over the store counter. See id. (furtive gestures and conduct evidencing consciousness of guilt are affirmative links). Third, both officers testified that they saw Amilpas throw an object behind the counter and Officer Yanez testified that he found seven small plastic bags containing cocaine inside a larger plastic bag in the location in which Sergeant Vega [had] told Officer Yanez the object landed. The cocaine was in plain view, on the floor of the store, and was located near where Amilpas had been standing, when he threw the object. See, id. (whether contraband was in plain view, [17] as well as proximity and accessibility of contraband to appellant are affirmative links). Fourth Amilpas had ap-

-11-

proximately $3,070 in cash on his person. See id. (large amount of cash on defendant's person is affirmative link). Finally, the cocaine weighed approximately 64.7 grams and had a value between $2,200 and $3,000. See Robertson, 80 S.W.3d at 740 ("The amount of contraband found is a factor we can consider in determining if an affirmative link exists.").

Amilpas contends that the judgment must be reversed because evidence of many of the affirmative links is absent in this case. In support of his argument, Amilpas cites to Allen v. State, 249 S.W.3d 680 (Tex.App.-Austin 2008, no pet.), because the Allen court held there was insufficient evidence to support Allen's conviction where many links were absent. In Allen, the evidence showed that Allen did not live at the apartment where the cocaine was found, no cocaine was found on his person, Allen did not attempt to flee or hide any items when officers entered, Allen cooperated with the police and made no furitive [sic] gestures, and most of the cocaine was hidden in a different room. Id. at 694, 702. Although several of the same links are absent in this case, unlike in Allen, here, there is evidence that (1) Amilpas was carrying a significant amount of cash, and (2) attempted to rid himself of the cocaine that he carried on his person when the officers entered the store. Accordingly, Allen does not support Amilpas's argument. See id. Lair v. State, 265 S.W.3d 580, 588 (Tex. App.-Houston [1st Dist.] 2008, pet. ref'd) [18] (evidence was sufficient to support conviction where nine links were not present because "possible links that do not exist ... do not negate the links that are present"); see also Satchell v. State, 321 S.W.3d 127, 134 (Tex. App.-Houston [1st Dist.] 2010, pet. ref'd) ("The absence of various links does not constitute evidence of innocence to be weighed against the links present.").

Amilpas also contends that evidence that he threw an object over the counter is insufficient evidence to link him to the cocaine because (1) Sergeant Vega testified that the object appeared to be a knife and (2) other people who may have possessed the cocaine were present in the store. While there was some evidence from which a rational juror could infer that the object Amilpas threw was a knife, the jury rejected that conclusion. We presume the jury resolved

-12-

conflicting evidence in favor of the verdict and defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012); *see also Henson v. State*, 388 S.W.3d 762, 773 (Tex. App.–Houston [1st Dist.] 2012) ("verdict of guilty is an implicit finding rejecting the defendant's [defensive] theory"), *aff'd* 407 S.W.3d 764 (Tex. Crim. App. 2013).

Considering all of the evidence in the light most favorable to the verdict, we conclude that sufficient affirmative links connect Amilpas to the cocaine and that a rational trier of fact could have found beyond a reasonable doubt that Amilpas exercised care, custody, or control over the cocaine knowing that it was [19] contraband. *See Evans*, 202 S.W.3d at 166 ("amply sufficient evidence connecting appellant to the actual care, custody, control or management of the cocaine" when viewing circumstantial evidence "in combination and its sum total"); *Noah v. State*, 495 S.W.2d 260, 263 (Tex. Crim. App. 1973) (sufficient evidence to support possession of heroin conviction where officer saw defendant throw package, he returned to place where package had been thrown to recover it three to five minutes after defendant had thrown it, and package had contained heroin); *Sneed v. State*, 875 S.W.2d 792, 795 (Tex. App.–Fort Worth 1994, no pet.) (although defendant did not have exclusive control over place that cocaine was found, evidence of possession sufficient where officer saw defendant take cocaine out of pocket and throw it on floor).

We overrule Amilpas's third issue.

### Permissible Jury Argument

In his fourth issue, Amilpas contends that the prosecutor made an improper closing argument because he referred to Amilpas's subpoena power, which was an attempt to shift the burden of proof.

**A. Applicable Law**

"The law provides for, and presumes, a fair trial free from improper argument by the State." *Thompson v. State*, 89 S.W.3d 843, 850 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd) (citing *Long v. State*, 823 S.W.2d 259, 267 [20] (Tex. Crim. App. 1991) (en banc)). The approved areas of jury argument are (1)

summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing counsel, and (4) plea for law enforcement. See Wesbrook v. State, 29 S.W.3d 103, 115 (Tex.Crim.App. 2000) (en banc); Andrade v. State, 246 S.W.3d 217, 229-30 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd). In examining challenges to a jury argument, a court considers the remark in the context in which it appears. Gaddis v. State, 753 S.W.2d 396, 398 (Tex.Crim. App. 1988).

Courts have held that, during jury argument, the State may comment on the defendant's failure to present evidence in his favor. See Jackson v. State, 17 S.W.3d 664, 674 (Tex.Crim.App. 2000) ("We have held that the prosecutor may comment on the defendant's failure to produce witnesses and evidence so long as the remark does not fault the defendant for exercising his right not to testify."); Patrick v. State, 906 S.W.2d 481, 491 (Tex.Crim.App. 1995) ("[I]f the language can reasonably be construed to refer to appellant's failure to produce evidence other than his own testimony, the comment is not improper."). Jury argument pointing out that the defendant has failed to present evidence in his favor does not shift the burden of proof but instead summarizes the state of the evidence and is a reasonable deduction from the evidence. See Caron v. State, 162 S.W.3d 614, 618 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (holding that prosecutor's [21] statement that "[i]f there is something out there to exonerate you, you want to make it known" was permissible jury argument).

## B. Analysis

Amilpas complains that the prosecutor's closing argument was improper because he referred to Amilpas's subpoena power and the fact that no witness had testified that the cocaine found in the store belonged to her. Before the prosecutor made the argument, Amilpas's counsel argued that Amilpas's girlfriend was also present at the store and that the cocaine could have been hers.

The prosecutor responded:

[T]he girl who was next to the defendant in that store was between 5 and 8 feet away dealing with a clerk as they entered. More importantly, the only person who threw anything behind the counter, the only person who

possessed the cocaine those officers found wasn't some mysterious girl. It was the defendant.

Ladies and gentlemen, keep in mind the burden is with the State and the State has the burden alone. [Amilpas] has rights, including the right of subpoena power. Did you see any girl standing here today saying: Yeah, it was my cocaine?

Amilpas objected that the State was "shifting the burden of proof," and the trial court overruled his objection.

Having considered the allegedly improper argument in context, we conclude that the prosecutor's statement was a permissible response to Amilpas's counsel's argument because it was a remark on Amilpas's failure to produce evidence from other sources. See Wesbrook, 29 S.W.3d at 115 (answer to argument of opposing [22] counsel is an approved area of jury argument); Harris v. State, 122 S.W.3d 871, 884 (Tex.App.–Fort Worth 2003, pet. ref'd) (prosecutor's comment "about the subpoena power of a defendant is proper if it refers to the defendant's failure to produce evidence from other sources"). Accordingly, the prosecutor's statement did not shift the burden of proof to Amilpas. See Baines v. State, 401 S.W.3d 104, 109 (Tex.App.–Houston [14th Dist.] 2011, no pet.) (prosecutor's statement that defendant "has the same subpoena power" and could have called witnesses to testify in his defense was "a permissible remark about appellant's failure to produce evidence in his favor on his defense and did not shift the burden of proof to appellant"). We hold that the trial court did not err in overruling Amilpas's objection to improper jury argument.

We overrule Amilpas's fourth issue.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

-15-